ACCEPTED
03-14-00629-CV
3800795
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 2:31:39 PM
JEFFREY D. KYLE
CLERK

_____

## NO. 03-14-00629-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 2:31:39 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS
## AT AUSTIN

_____

## LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT
### and Michael L. WILLIAMS, Commissioner of Education, State of Texas
### Appellants

### v.

## Jorge VAZQUEZ,
### Appellee

_____

**On Appeal from the 419 Judicial District Court, Travis County, Texas**
**Trial Court No. D-1-GN-13-003654**
**Honorable Scott Jenkins, Judge Presiding**

_____

## BRIEF OF APPELLANT
## LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT

_____

**WALSH, ANDERSON, GALLEGOS, GREEN & TREVIÑO, P.C.**
**STACY T. CASTILLO**
State Bar No. 00796322
scastillo@wabsa.com
**D. CRAIG WOOD**
State Bar No. 21888700            **APPELLANT LOS FRESNOS CISD**
cwood@wabsa.com                  **REQUESTS ORAL ARGUMENT**
**ELIZABETH G. NEALLY**
State Bar No. 14840400
eneally@wabsa.com
100 N.E. Loop 410, #900
San Antonio, Texas 78216
Phone (210) 979-6633; Fax (210)979-7024
ATTORNEYS FOR LOS FRESNOS CISD

## IDENTITY OF THE PARTIES AND COUNSEL

Appellant Los Fresnos Consolidated Independent School District certifies that the following is a complete list of the parties to the trial court's order from which Appellant appeals, as well as the trial and appellate counsel.

A. **Appellee (Plaintiff)**

**Jorge Vazquez**

Counsel:        Mark W. Robinett
Brim, Arnett, Robinett & Conners, P.C.
2525 Wallingwood Drive, Building 14
Austin, TX 78746
(512) 328-0048
Fax: (512) 328-4814
mrobinett@brimarnett.com

B. **Appellant (Defendant)**

**Los Fresnos Consolidated Independent School District**

Counsel:        Stacy T. Castillo
D. Craig Wood
Elizabeth G. Neally
Walsh, Anderson, Gallegos, Green & Treviño, P.C.
100 N.E. Loop 410, # 900
San Antonio, Texas 78216
(210) 979-6633
Fax (210) 979-7024
scastillo@wabsa.com
cwood@wabsa.com
eneally@wabsa.com

C.    **Appellant (Defendant)**

   **Texas Commissioner of Education, Michael Williams**

   Counsel:    Jennifer Hopgood
               Nichole Bunker-Henderson
               Assistant Attorneys General
               Administrative Law Division
               Office of the Attorney General of Texas
               P.O. Box 12548, Capitol Station
               Austin, Texas 78711-2548
               (512) 475-4300
               Fax (512) 320-0167
               Jennifer.Hopgood@texasattorneygeneral.gov
               Nichole.Bunker-Henderson@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL .....................................................i

TABLE OF CONTENTS................................................................................. iii

INDEX OF AUTHORITIES..............................................................................vi

STATEMENT OF THE CASE............................................................................xi

STATEMENT ON ORAL ARGUMENT ............................................................ xii

ISSUES PRESENTED ON APPEAL.................................................................. xiii

STATEMENT OF FACTS ................................................................................2

    A. Background.........................................................................................2
    B. Proposed Nonrenewal ..........................................................................2
    C. The Nonrenewal Hearing......................................................................3
        1. Live Witness Testimony...................................................................3
            a. Testimony of Principal Villarreal.................................................3
                1. Inappropriate movie incident ...............................................4
                2. Inappropriate discipline/video tape incident ................................5
                3. Inappropriate comments......................................................6
             b. Testimony of Ada Amaro-Sibaja ................................................11
             c. Testimony of Superintendent Salazar ..........................................12
             d. Testimony of Appellee Vazquez .................................................16
                 1. Inappropriate movie incident ..............................................16
                 2. Inappropriate discipline/video tape incident ..............................17
                 3. Inappropriate comments......................................................17
         2. Pertinent Documentary Evidence ......................................................19
             a. Written student statements regarding video tape incident
               (Exhibit 17)............................................................................19
             b. Written student statements regarding inappropriate comments (Exhibit
               11).......................................................................................21
             c. Notice of Warning, March 5, 2013 (Exhibit 8)................................26
             d. Notice of Warning, April 30, 2012 (Exhibit 9)................................27

  e.  Notice of Warning, April 13, 2012 (Exhibit 12) ................................27

  f.  Appraisal ................................................................................28

 D. Board Voted to Nonrenew ....................................................................29

 E. Appeal to the Commissioner ................................................................29

 F. Appeal to Trial Court ............................................................................29

SUMMARY OF THE ARGUMENT ........................................................................31

ARGUMENT ............................................................................................................33

 A. Standard Of Review .............................................................................33

 B. The Rules of Evidence do not apply ....................................................35

  1. Differences between a nonrenewal and termination hearing ..............35

  2. Statutory construction of nonrenewal procedures ............................37

   a.  Legislative intent ................................................................37

   b.  Commissioner's interpretation ..........................................39

 C. Hearsay evidence can support substantial evidence ...........................40

  1. Texas school cases ............................................................................41

  2. Other Texas cases not applicable ....................................................44

  3. Fifth Circuit cases ............................................................................46

  4. Sister state courts ............................................................................47

 D. Even if the Rules of Evidence apply, liberal exceptions apply to hearsay evidence ..............................................................................................51

 E. The right to cross-examine adverse witnesses under Texas Education Code §21.207(c) does not prohibit the use of hearsay statements in a nonrenewal hearing before a school board ............................................54

 F. Even if hearsay statements are not permissible, the non-hearsay evidence presented constituted substantial evidence supporting the Board's decision ..............................................................................................57

 G. In the alternative, if the Court finds that hearsay evidence should have been excluded, the case should be remanded to the Commissioner for further findings based on the admissible evidence ...............................60

CONCLUSION AND PRAYER ................................................................................61

CERTIFICATE OF SERVICE ................................................................................63

CERTIFICATE OF COMPLIANCE ........................................................................64

APPENDIX

Commissioner's Decision .............................................................................. A

Trial Court's Final Judgment ....................................................................... B

Texas Education Code §21.207 .................................................................... C

# INDEX OF AUTHORITIES

**Cases**

*Accord Bradley v. Colonial Mental Health and Retardation Services Board,*
856 F.2d 703 (4th Cir.1988) ..................................................................55

*Amarillo Indep. Sch. Dist. v. Meno,*
854 S.W.2d 950, (Tex. App. – Austin 1993, writ denied)....................................60

*Benson v. San Antonio Savings Ass'n,*
374 S.W.2d 423 (Tex. 1963) ..............................................................44

*Board of Directors of Ames Community Sch. Dist. v. Cullinan,*
745 N.W.2d 487 (S. Ct. Iowa 2008) .......................................... 47, 48, 49, 52, 54

*Board of Trustees of Employees Ret. Sys. v. Benge*,
942 S.W.2d 742 (Tex. App.—Austin 1997, writ denied)....................................35

*Boykins v. Fairfield Board of Educ.,*
492 F.2d 697 (5th Cir. 1974), *cert. denied* 420 U.S. 962 (1975) .................. 39, 40

*Broughton v. Livingston Indep. Sch. Dist.,* No. 9:08-CV-175,
2010 WL 4453763 (E.D. Tex. Nov. 3, 2010) ................................................ 53, 58

*Bruington Engineering, Ltd v. Pedernal Energy, L.L.C.,*
 - S.W.3d - , No. 04-13-558-CV, 2014 WL 4211024 (Tex. App. – San Antonio
Aug. 27, 2014, no pet.) ...................................................................38

*Brauninger v. Motes,*
260 Fed. Appx. 634 (5th Cir. 2007)............................................... 53, 58

*City of El Paso v. Public Util. Com'n*,
883 S.W.2d 179 (Tex. 1994) ...........................................................35

*Doty v. Tupelo Pub. Sch. Dist.,*
751 So.2d 1212, (Miss. Ct. App. 1999)...............................................48

*Farris v. Fort Bend Indep. Sch. Dist.*,
27 S.W.3d 307 (Tex. App.—Houston [1st Dist.] 2000, no pet.)...........................34

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,*
662 S.W.2d 953 (Tex. 1984) .................................................................. 33, 34

*Galbraith Engineering Consultants, Inc. v. Pochuca,*
290 S.W.3d 863 (Tex. 2009) ...................................................................38

*Gerst v. Gibraltar Savings Ass'n,*
413 S.W.2d 718, 723 (Tex. Civ. App. – Austin 1967), writ ref'd n.r.e., 417
S.W.2d 584 (Tex. 1967)..........................................................................45

*Hardy v. Matter,*
350 S.W.3d 329, 332 (Tex. App. – San Antonio 2011, pet. dism'd) ...................38

*Hierlmeier v. North Judson-San Pierre Bd. of Sch. Trustees,*
730 N.E.2d 821 (Ind. Ct. App. 2000) .................................................... 47, 48

*Hinkle v. Garrett-Keyser-Butler Sch. Dist.,*
567 N.E.2d 1173, 1178 (Ind. Ct. App. 1991) .......................................... 48, 50

*In re General Elec. Co.,*
271 S.W.3d 681, 687 (Tex. 2008) ...........................................................38

*In re Hall,*
286 S.W.3d 925, (Tex. 2009) .................................................................37

*In Re M.N.,*
262 S.W.3d 799, (Tex. 2008) .................................................................38

*Laidlaw Waster Sys. (Dallas) Inc. v. City of Wilmer,*
904 S.W.2d 656 (Tex. 1995) ..................................................................38

*Lewis v. Southmore Savings Ass'n,*
480 S.W.2d 180 (Tex. 1972) .............................................................. 44, 51

*Mary Lee Foundation v. Texas Employment Comm'n,*
817 S.W.2d 725 (Tex. App. – Texarkana 1991, writ denied) ...............................60

*Matthews v. Scott*,
268 S.W.3d 162 (Tex. App. – Corpus Christi-Edinburg 2008, no pet.)...............33

*McConnell v. Alamo Heights Indep. Sch. Dist.,*
576 S.W.2d 470 (Tex. Civ. App. – San Antonio 1978, writ ref's n.r.e.) .............33

*Miller v. Houston Indep. Sch. Dist.,*
51 S.W.3d 676 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) ....................33

*Mireles v. Tex. Dep't of Pub. Safety,*
9 S.W.3d 128 (Tex. 1991)..................................................................... 33, 34

*Montgomery Indep. Sch. Dist. v. Davis,*
34 S.W.3d 559 (Tex. 2000)................................................................... 33, 34

*Nelson v. Weatherwax*,
59 S.W.3d 340 (Tex. App.—Fort Worth 2001, pet. denied)......................... 33, 34

*Peaster Indep. Sch. Dist. v. Glodfelty,*
63 S.W.3d 1 (Tex. App. – Texarkana 2001, no pet.).............................. 42, 43, 44

*Railroad Comm'n v. Southern Pacific Co.,*
468 S.W.2d 125 (Tex. App. – Austin 1971), writ ref'd n.r.e., 471 S.W.2d 39
(Tex. 1971)......................................................................................... 44, 45

*Richardson v. Perales,*
402 U.S. 389 (1970)....................................................................................47

*School Bd. of Broward Co., Fla. v. Department of Health, Education, and Welfare,*
525 F.2d 900 (5th Cir. 1976) ................................................................ 46, 47, 52

*State v. Pub. Util. Comm'n,*
883 S.W.2d 190 (Tex. 1994)........................................................................34

*Stratton v. Austin Indep. Sch. Dist.,*
   8 S.W.3d 26 (Tex. App. – Austin 1999, no writ) ...................................................41

*Texas Dep't of Transp. v. Needham,*
   82 S.W.3d 314 (Tex. 2002)...................................................................................37

*Texas Educ. Agency v. Goodrich Indep. Sch. Dist.,*
   898 S.W.2d 954 (Tex. App. – Austin 1995, writ denied)......................................34

*Texas Employment Comm'n v. Hays,*
   360 S.W.2d 525 (Tex. 1962) ................................................................................34

*Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.,*
   665 S.W.2d 446 (Tex. 1984) ................................................................................35

*Texas State Bd. of Dental Exam'rs v. Sizemore,*
   759 S.W.2d 114 (Tex. 1988), *cert. denied,* 490 U.S. 1080 (1989)......................33

*TGS-NOPEC Geophysical Co. v. Combs,*
   340 S.W.3d 432 (Tex. 2011) ...................................................... 37, 38, 39, 40, 52

*W. v. Grand Cnty.,*
   967 F.2d 362 (10th Cir. 1992) .............................................................................55

*Whitaker v. Moses,*
   40 S.W.3d 176 (Tex. App. – Texarkana 2001, no pet.).......................................40

*Wilson v. Board of Education,*
   511 S.W.2d 551 (Tex. App. – Fort Worth 1974, writ ref'd n.r.e) ........... 40, 41, 42

*Wright v. Marsh,*
   378 So. 2d 739 (Ala. Civ. App.) *writ denied sub nom. Ex parte Marsh,* 378 So.
   2d 742 (Ala. 1979) ...............................................................................................56

*Young v. U.S. Dep't of Agriculture,*
   53 F.3d 728 (5th Cir. 1995) ...............................................................................47

*Yselta Indep. Sch. Dist. v. Meno,*
  933 S.W.2d 748 (Tex. App. – Austin 1996, writ denied).......................................60

**Statutes**

7 TEX. ADMIN. CODE §9.18 ...............................................................................45

7 TEX. ADMIN. CODE §9.26 ...............................................................................45

16 TEX. ADMIN. CODE §1.101 ...........................................................................45

16 TEX. ADMIN. CODE §1.85 .............................................................................45

TEX. EDUC. CODE §21.204 (e) ..........................................................................41

TEX. EDUC. CODE §21.207 ........................................................................ 35, 36

TEX. EDUC. CODE §21.251-21.260.....................................................................36

TEX. EDUC. CODE §21.255 ................................................................................36

TEX. EDUC. CODE §21.256 ...........................................................................36, 37

TEX. EDUC. CODE §21.307 ................................................................................33

TEX. FINANCE CODE §11.202 ............................................................................45

TEX. GOV'T CODE §2001.081.............................................................................52

TEX. GOV'T CODE §312.002...............................................................................37

TEX. GOV'T CODE §312.005...............................................................................37

**Commissioner's Decisions**

*Dews v. Tyler Indep. Sch. Dist.,*
  Dkt. No. 053-R1-0508 (Comm'r Educ. 2008).....................................................40

*Green v. Brazosport Indep. Sch. Dist.,*
  Dkt. No. 083-R1-0512 (Comm'r Educ. 2012).....................................................40

# STATEMENT OF THE CASE

*Nature of the case:* This is an administrative appeal from the nonrenewal of a teacher's term contract.

## Course of Proceedings and Disposition:

Vazquez filed a Petition for Review with the Commissioner of Education on July 2, 2013, appealing the Board's nonrenewal decision. *See* A.R. [1] Vol. I at 66-69. On August 21, 2013, the Commissioner affirmed the Board's nonrenewal decision. *See* A.R. Vol. I at 5-24. Vazquez then filed a Motion for Rehearing on September 9, 2013, which was denied by operation of law. *Id.* at Vol. I at 28-38.

Vazquez filed his Original Petition in Travis County district court on October 13, 2013, appealing the Commissioner's decision. *See* C.R. at 3-6. After briefing by the parties and hearing oral argument, the trial court reversed the Commissioner's decision. *See* C.R. at 152-154.

The District and the Commissioner timely filed their respective Notices of appeal on October 3, 2013. *Id.* at 155-163. After receiving an extension of time to file its Brief, the District now timely files this its Brief of Appellant.

---

[1] A.R. denotes the Administrative Record from the proceeding before the Commissioner of Education, which was filed in this Court with the Reporter's Record. The page references to the Administrative Record are to the pages bates-numbered by TEA and marked as "TEA#." C.R. denotes Clerk's Record, and R.R. refers to the Reporter's Record.

## STATEMENT ON ORAL ARGUMENT

Appellant Los Fresnos Consolidated Independent School District requests oral argument.

# ISSUES PRESENTED ON APPEAL

1.  Whether the Texas Rules of Evidence apply in a teacher term contract nonrenewal hearing before a school board.

2.  Whether hearsay evidence can support substantial evidence in a teacher term contract nonrenewal hearing.

3.  If the Rules of Evidence apply, whether liberal exceptions apply to hearsay evidence in a teacher term contract nonrenewal hearing.

4.  Whether the right to cross-examine adverse witnesses permitted under Texas Education Code §21.207(c) prohibits the use of hearsay statements in a teacher term contract nonrenewal hearing.

5.  If hearsay statements are not permitted in a nonrenewal hearing before a school board, whether the non-hearsay evidence presented at Vazquez' nonrenewal hearing constituted substantial evidence supporting the Board's decision to nonrenew Vazquez' teaching contract.

6.  In the alternative, if hearsay statements are not permitted in a nonrenewal hearing, whether the trial court erred by not remanding the case to Commissioner to make findings based on the non-hearsay evidence.

_____

## NO. 03-14-00629-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS
## AT AUSTIN

_____

**LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**
**and Michael L. WILLIAMS, Commissioner of Education, State of Texas**
**Appellants**

**v.**

**Jorge VAZQUEZ,**
**Appellee**

_____

**On Appeal from the 419 Judicial District Court, Travis County, Texas**
**Trial Court No. D-1-GN-13-003654**
**Honorable Scott Jenkins, Judge Presiding**

_____

## BRIEF OF APPELLANT
## LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT

To the Honorable Justices of the Third Court of Appeals:

Appellant Los Fresnos Consolidated Independent School District ("Los Fresnos CISD," "LFCISD" or "the District") files its Brief in this appeal. As set out below, this Court should reverse the trial court's order and affirm the Commissioner's decision, upholding Vazquez' nonrenewal.

**STATEMENT OF FACTS**

**A.** *Background*

For the 2012-2013 school year, Appellee Vazquez was employed as a certified teacher for the District under a term contract. *See* A.R. Vol. II at 349-50. He taught at Los Fresnos for approximately nine years, teaching computer programming, banking and financing, and keyboarding. *See* A.R. Vol. II at 230:10-17).

**B.** *Proposed non-renewal*

On April 4, 2013, the Principal of Los Fresnos United 9th grade campus, where Vazquez taught, recommended to the Superintendent that Vazquez be considered for nonrenewal. *See* A.R. Vol. II at 347. On May 13, 2013, the Board of Trustees of Los Fresnos CISD accepted the recommendation of its Superintendent, Gonzalo Salazar, to propose the nonrenewal of Vazquez' term contract. *See* A.R. at 286-288. Superintendent Salazar sent Vazquez a letter advising him that his contract had been proposed for nonrenewal and setting out the following reasons for the proposed nonrenewal:

1. Students and parents had complained of his inappropriate comments and that he made them feel uncomfortable;

2. A parent had complained of his showing an inappropriate movie;

3. Parents requested their children be removed from his class;

4. Other students corroborated others' complaints;

5. Despite prior directives concerning his prior inappropriate and unprofessional behavior, Vazquez failed to follow those directives;

6. His appraisal reflected performance issues, including issues involving student discipline, communications with students, and compliance with District policies.

*See* A.R. Vol. II at 286-288. In that letter, Superintendent Salazar also set out the Board policies that Vazquez had violated, including, but not limited to, his failure to maintain discipline, failure to adhere to professional standards of conduct, and misrepresenting facts to his supervisor. *Id.*

## C. *The Nonrenewal Hearing*

Vazquez timely requested and received a hearing on his proposed non-renewal; the Board heard the proposed non-renewal on June 13, 2013. *See generally* A.R. Vol. II at 117-441. At the hearing, both the administration and Vazquez presented evidence and questioned witnesses. *Id.*

The following is a summary of the evidence presented at the non-renewal hearing:

### 1. Live Witness Testimony

#### a. Testimony of Principal Villarreal

Mr. Joseph Villarreal, principal of Los Fresnos United 9th grade campus since July 2012, met with his predecessor, Jimmy McDonough, about school employees who were having issues at the campus prior to taking over as principal. *See* A.R. Vol. II at 134:11-23, 135:1-15. Mr. Villarreal was told that Vazquez had received two Notices of Warning just prior to the 2012-13 school year. *Id.* at 135-136; 143; 410, 440. Mr. Villarreal testified that a Notice of Warning is rarely given to a teacher, but it is issued when a teacher has issues regarding student safety or issues detrimental to student learning. *Id.* at 135:16-25, 136:1-5.

1. *Inappropriate movie incident*

On or about April 10, 2012, Principal McDonough investigated a complaint of Vazquez' showing the movie *Burlesque* to his class. *Id.* at 136-137. As a result of the investigation, Principal McDonough issued a Notice of Warning dated April 13, 2012 for showing an inappropriate movie, delineating the procedures to be followed by Vazquez in the future for showing movies in his classroom. *Id.* at 136-138, 440, 442.

In the Notice of Warning, Principal McDonough found that Vazquez admitted he showed *Burlesque* to the class during class time, the movie was not detailed in his lesson plans, and he had not received prior approval to show the film. *Id.* at 440. Additionally, Vazquez had not previewed the film himself before

Page 4

showing it. *Id.* Principal McDonough directed Vazquez to seek pre-approval before showing any movies or videos in his classroom and detail the movie or video in his lesson plans. *Id.* He was further warned that failure to preview the contents of videos before showing them to the class is never acceptable. *Id.*

## 2. *Inappropriate discipline/video tape incident*

On or about April 24, 2012, Principal McDonough received a complaint from a parent concerning Vazquez' alleged videotaping her daughter during class. *Id.* at 410. Principal McDonough investigated the incident. *Id.* The parent had complained that Vazquez had set up a camera to videotape a student because she had been tossing her hair and in his opinion, causing a distraction. *Id.* at 139:5-21; 140:2-8; 410. Vazquez was supposedly recording her to show how many times she was tossing her hair in the class period because he deemed it disruptive. *Id.* at 140:2-8.

During Principal McDonough's investigation, he took written statements from students about the incident. *Id.* at 141:11-14; 142:8-20; 449-457. The student statements corroborated the complaint that Vazquez was recording the student. *Id.*

On April 30, Principal McDonough issued a second Notice of Warning to Vazquez based on the video tape incident. *Id.* at 138:25; 139:1-4; 410. Principal

McDonough had met with Vazquez about the incident, and Vazquez acknowledged that he had moved the student to the front of the room and set the camera up, but that he was only pretending to record the student to help get her on task instead of playing with her hair. *Id.* at 410. He used the tactic as a form of corrective discipline. *Id.* In the Notice of Warning, Principal McDonough warned Vazquez to never lead a student to believe they are being videotaped as a means of discipline. *Id.* He was instructed that his behavior was not acceptable. *Id.*

Principal Villarreal testified that the actions taken by former Principal McDonough in issuing the two Notices of Warning were warranted based on the complaints received and corroborated. *Id.* at 137:10-24; 140:9-12; 142:21-25. According to Principal Villarreal, it is absolutely inappropriate to pretend to tape a student as a means of corrective discipline. *Id.* at 140:9-12, 22-25, 141:1-6.

### 3. *Inappropriate comments*

In or around January 2013, a student complained to another teacher that Vazquez had singled out and humiliated fellow student N.N. in front of the class for his clothing. *Id.* at 143:25; 144:12. The teacher brought this complaint to Principal Villarreal's attention. *Id.* at 144:10-12. As a result, Principal Villarreal conducted an investigation, personally questioning the students from the classroom regarding this incident. *Id.* at 145:1-10. He selected the students at random from

the class roster. *Id.* at 188:6-13.

Principal Villarreal spoke with student N.N. on the day of the incident. *Id.* at 145:4-10, 17-19; 173:16-21. N.N.'s statement of what had happened in class was corroborated by two other students, K.S. and C.M. *Id.* at 148-151, 414-418. The students told Principal Villarreal that Vazquez asked N.N. if he was wearing suspenders and a belt at the same time and if he had worn that on purpose. *Id.* 149, 151. When Vazquez was questioning him, N.N. tried to change the topic, but then Vazquez tried to make an example of how to answer a question by having another student turn on and off the light. *Id.*at 149:7-23. Student N.N. gave a written statement to Mr. Villarreal detailing this incident. *Id.* at 147:1-17; 414-417. Students C.M. and K.S. also gave written statements to Principal Villarreal about the incident. *Id.* at 148-151, 418, 419. The written statements were consistent with what the students had told Principal Villarreal. *Id.* at 148-151. The students' statements corroborated what N.N. had reported. *Id.* at 188:14-18.

Principal Villarreal testified that the incident caused him concern because Vazquez had singled out N.N. for issues that were not dress code violations, Vazquez had ridiculed the student by questioning him about his choice of clothing, and had intimidated N.N. *Id.* at 149-151.

Principal Villarreal met with Vazquez to discuss the suspenders incident. *Id.*

at 165:1-8. According to Principal Villarreal, Vazquez admitted making the comment about the suspenders and belt, but denied doing so in front of other students. *Id.* Vazquez claimed he was trying to save the student from embarrassment. *Id.* at 174:19-22.

During the course of the investigation of the incident involving N.N., additional information came to light regarding Vazquez' inappropriate conduct in class. *Id.* at 148:1-23, 152. During the investigation, Principal Villarreal asked if the students felt uncomfortable in Vazquez' class, and if they said yes, he asked why. *Id.* at 148. He did not suggest any particular conduct for them to report. *Id.* In addition to speaking with the principal, the students also provided him with their written statements on the day of or shortly after the suspenders comment, although the statements themselves are not dated. *Id.* at 173-174, 414, 418-420, 428-434.

Principal Villarreal obtained a statement from student G.V., who reported that Vazquez had made a comment that implied she was fat. *Id.* at 152. When the class was talking about popcorn, G.V. had commented that she could eat a bag by herself, and Vazquez commented "it shows". *Id.* at 152, 420. During his interviews with students, other students corroborated what G.V. had reported. *Id.* at 152:19-22, 190:5-13.

Student N.D.L. reported to him that Vazquez had shown a strong affection

towards her and her family, making her uncomfortable; no other student statements corroborated this. *Id.* at 153-154.

Principal Villarreal also met with student E.F., who provided a written statement to Mr. Villarreal during his investigation. *Id.* at 155-162, 429-434. In addition to reporting several different incidents (detailed *infra),* E.F. reported to the principal that Vazquez commented to her about her wearing a skirt, asking if she was a cheerleader and telling her she looked nice when she wore dresses. *Id.* at 155, 429-434. Principal Villarreal testified that Vazquez had behaved inappropriately based on E.F.'s written statement of incidents that had occurred in the classroom. *Id.* at 155-162, 429-434. Specifically, he found that Vazquez had behaved unprofessionally by commenting on E.F.'s clothing and winking at her. *Id.* He further stated that Vazquez did not handle the class appropriately when Vazquez asked students to vote on whether another student had called him an "asshole." *Id.* Several other students corroborated this indeed had occurred. *Id.* at 189:17-25.

Additionally, E.F. reported to Principal Villarreal that Vazquez told another female student she needed to wear a "tight little outfit" if she were going for a job interview. *Id.* at 159. Principal Villarreal testified that other students corroborated this incident. *Id.* Based on what E.F. had reported to him, Principal Villarreal

found Vazquez had ridiculed students, made them feel uncomfortable, and behaved inappropriately. *Id.* at 157-158. Principal Villarreal testified that he believed student E.F. and found her credible; she was a "top-notch student academically" with no discipline issues. *Id.* at 157-158, 192:5-8.

Principal Villarreal testified that based on his investigation, the corroborating information provided by students, the information contained in Vazquez' personnel file concerning prior Notices of Warning, and the information through his discussions with Mr. McDonough regarding Vazquez, he believed that Vazquez exhibited a pattern of behavior that required action be taken. *Id.* at 163:3-17. Consequently, Mr. Villarreal issued a Notice of Warning dated March 5, 2013, which contained the information he found as a result of his investigation. *Id.* at 163:18-25, 164:1, 407-408. He also recommended to the superintendent that Vazquez' contract be nonrenewed. *Id.* at 166:4-12, 346-47.

Mr. Villarreal testified Vazquez had previously been informed of his obligations and requirements of his duties, and signed the Employee Handbook Acknowledgment Form acknowledging receipt of the Employee Handbook for the 2011-2012 and 2012-2013 school years. *Id.* at 168:16-25; 404, 444.

Mr. Villarreal testified that in his opinion, Vazquez failed to be a positive role model for students and failed to support the mission of the school district as

required by item 13 on his job description. *Id.* at 168:2-7, 352-354. He further testified that Vazquez failed to maintain a professional relationship with colleagues, students, parents, and community members, in violation of item 19 on his job description. *Id.* at 168:8-15, 352-354.

### b. Testimony of Ada Amaro-Sibaja

The Board also heard testimony from Ms. Ada Amaro-Sibaja, Executive Director for Support Services. *Id.* at 198-207. Ms. Amaro-Sibaja became involved in the current matter as a result of a Level Two Grievance filed by Vazquez in connection with his March 5, 2013 Notice of Warning. *Id.* at 199:10-15. Ms. Amaro-Sibaja testified that she conducted an investigation into Vazquez' grievance concerning the Notice of Warning, looking into the basis for the Warning. *Id.* at 199:14-22. In her investigation, she interviewed students and took student statements, selecting many students at random from the class roster and based on names that came up during her investigation. *Id.* at 199-201. She testified that she wanted to conduct her own investigation and "just have a more thorough investigation on [her] own." *Id.* at 202:17-22.

Ms. Amaro-Sibaja took several witness statements and those statements were consistent with statements obtained by Principal Villarreal in his earlier investigation. *Id.* at 200-201, 206:14-18, 415-417, 421-427, 435-438. She testified

that the students' written statements were not far removed from the incidents reported. *Id.* at 206:6-10. The statements she received from the students were dated April and May 2013. *Id.* at 206, 415-417, 421-427, 435-438. Based on her investigation, she concluded that the Notice of Warning had been justified and warranted. *Id.* at 203:3-15. She also testified that she would have recommended Vazquez for nonrenewal if she were his supervisor. *Id.* She found that the students had been humiliated, embarrassed, and made to feel awkward by Vazquez. *Id.*

### c. **Testimony of Superintendent Salazar**

Superintendent Gonzalo Salazar also testified at the nonrenewal hearing. *Id.* at 207-225. Superintendent Salazar testified that based on his review of Vazquez' conduct, Vazquez had not been a positive role model for students and had not supported the mission of the school district as required by item 13 on his job description. *Id.* at 208:4-14. Vazquez failed to maintain a professional relationship with colleagues, students, parents and community members as required by item 19 of his written job description. *Id.* at 208:15-19; 352-354. In Superintendent Salazar's professional opinion, Vazquez failed to comply with the standard practices and ethical conduct toward students in violation of Board Policy DH (Legal). *Id.* at 209:1-6; 459-461. Additionally, Vazquez violated Board

Policy DH (Local) and DH (Exhibit), which required employees to recognize and respect the rights of students, parents and serve the best interests of the District. *Id.* at 209:7-25, 210:1-5; 463-470.

According to Superintendent Salazar, Vazquez failed to protect the rights of students and failed to meet the provisions of DH (Exhibit) of safeguarding academic freedom, maintaining the dignity of the profession, respecting and obeying the law, demonstrating personal integrity, and exemplifying honesty. *Id.* 210: 8-18. Based on his review of Vazquez' conduct, Superintendent Salazar testified that Vazquez had violated the following provisions of Board Policy DH (Exhibit):

- *Standard 1.7*
  The educator shall comply with state regulations, written local Board policies, and other state and federal laws.

- *Standard 1.10*
  The educator shall be of good moral character and be worthy to instruct or supervise the youth of this state.

- *Standard 3.2*
  The educator shall not intentionally, knowingly, or recklessly treat a student or minor in a manner that adversely affects or endangers the learning, physical health, mental health, or safety of the student or minor.

- *Standard 3.4*
  The educator shall not exclude a student from participation in a program, deny benefits to a student, or grant an advantage to a student on the basis of race, color, gender, disability, national origin, religion,

family status, or sexual orientation.

- *Standard 3.8*
  The educator shall maintain appropriate professional educator-student relationships and boundaries based on a reasonably prudent educator standard.

- *Standard 3.9 (b)*
  The educator shall refrain from inappropriate communications with a student or minor, including, as it relates to the subject matter of the communication.

*Id.* at 210-212, 467-470.

According to Superintendent Salazar, Vazquez had also violated Board Policy FFH (Legal and Local), which prohibited discrimination, retaliation and harassment of students. *Id.* at 212, 474. Superintendent Salazar testified that what Vazquez termed redirecting a student was actually harassment of students. *Id.* He testified further that the behavior exhibited by Vazquez did not support the school's mission in developing successful, responsible, life-long learners through a quality educational experience. *Id.* at 213. "[S]chools should be a safe haven. It should be a place where [students] feel they can come and be protected. The last thing that should happen is for a teacher to ridicule a student…." *Id.* at 213:14-19.

Vazquez received a Notice of Proposed Nonrenewal dated May 17, 2013, which detailed the reasons for the proposed nonrenewal as permitted in District Policy DFBB (Local) and which Superintendent Salazar felt Vazquez had violated.

*Id.* at 268-273, 286-288.  These reasons included:

- Deficiencies pointed out in observation reports, appraisals, or evaluations, supplemental memoranda or other communication;

- Failure to fulfill duties or responsibilities;

- Inability to maintain discipline in any situation in which the employee is responsible for the oversight and supervision of students;

- Insubordination or failure to comply with Board policies or administrative regulations;

- Failure to meet the District's standards of professional conduct;

- Failure to maintain an effective working relationship, or maintain good rapport with parents, the community or colleagues;

- Misrepresentation of facts to a supervisor or other District official in the conduct of District business;

- Any attempt to encourage or coerce a child to withhold information from the child's parent or from other District personnel;

- Any reason constituting good cause for terminating the contract during its term;

  - Violation of the Preamble to the Code of Ethics and Standard Practices for the Texas Educators (Code), District Policy DH (Exhibit)

    - Failing to maintain the dignity of the profession, respect and obey the law and demonstrate personal integrity and exemplify honesty;

  - Violation of Standard 1.7 of the Code….comply with the state regulations, written local school board policies, and other

Page 15

applicable state and federal laws;

- Violation of Standard 1.10 of the Code…to be of good moral character and be worthy to instruct or supervise the youth of this state;

- Violation of Standard 2.2 of the Code…the educator shall not intentionally, knowingly, or recklessly treat a student or minor in a manner that adversely affects or endangers the learning, physical health, mental health, or safety of the student or minor;

- Violation of District Policy DH (Local)…to perform …duties in accordance with state and federal law, District policy and ethical standards.

*Id.*

Superintendent Salazar testified that based on his review of Vazquez' conduct, Vazquez had violated or failed to adhere to each of the enumerated items in the May 17, 2013 Notice of Nonrenewal. *Id.* As a result, Mr. Salazar recommended that the Board nonrenew Vazquez' contract. *Id.*

### d. **Testimony of Appellee Vazquez**

#### 1. *Inappropriate movie incident*

Regarding the inappropriate movie, Vazquez admitted that he showed the movie *Burlesque* to his class. *Id.* at 242-243. He testified that he obtained the movie from a student and assumed that the content was appropriate based on the movie rating of PG-13. *Id.* He allowed the students to watch the movie, but claimed that they only had time to watch a portion of it. *Id.* at 244. He admitted

that he personally watched the remainder of the movie later and then realized the movie was not appropriate to be shown in class despite its PG-13 rating. *Id.* at 245: 6-10; 264:12-23. He further acknowledged that he had not previewed the movie before showing it to the class and the movie was not in his lesson plans. *Id.* at 243. After receiving the Notice of Warning about showing the movie, he did not show another movie to his class. *Id.* at 245:11-15.

## 2. *Inappropriate discipline/video tape incident*

In his testimony, Vazquez admitted that he pretended to videotape student S.G. in an attempt to prevent off-task behavior. *Id.* at 234. Vazquez denied he intended to bully, humiliate or intimidate her. *Id.* at 233, 239. He denied that his pretend video taping was due to the twirling of her hair, but claimed it was because she was off-task. *Id.* at 234:2-16. Vazquez stated that he did not have to take time to set up a camera to record S.G., because the camera was already set up for recording presentations that the class was doing; he merely pretended to record S.G. being off-task. *Id.* at 233:19-21. After meeting with Principal McDonough about the incident, Vazquez never recorded students again. *Id.* at 241:12-16.

## 3. *Inappropriate comments*

Regarding the suspenders and belt incident, Vazquez admitted that he talked to student N.N. about the suspenders, asking him twice why he was wearing

suspenders with a belt, but Vazquez "didn't think [he] was talking loud." *Id.* at 247-249, 266. Vazquez claimed he asked this question from his teacher desk. *Id.* He denied attempting to humiliate N.N., claiming he was trying to prevent N.N. from getting made fun of. *Id.* He could not recall if he had a student turn the light on and off when he had talked to N.N., but acknowledged he had done so on previous occasions. *Id.* at 249. According to Vazquez, if he had done the light switch example, which he could not recall, it would have been about N.N.'s response to his questions, not the suspenders themselves. *Id.* at 249-250. Vazquez did not feel like N.N. was humiliated or intimidated. *Id.* at 253.

When asked about the "well its shows" comment to student G.V., Vazquez did not deny saying that; instead, he testified he did not remember that happening. *Id.* at 254:17-22. He did not remember accusing a student of using the word "asshole," and he did not remember asking a boy in class if a female student was pretty. *Id.* at 255-256. He denied discussing "coming out" and talking about a girl wearing "tight little outfit." *Id.* at 256-257. He denied calling E.F. a "thespo" and denied commenting about her appearance in a sexual way. *Id.* at 259. He further denied discussing clubbing, being hung-over, or making gay or lesbian references. *Id.* at 260-261. Vazquez testified that he was not aware of any negative feelings E.F. may have had towards him other than perhaps his not going to see her plays.

*Id.* at 260:7-11.  He testified that "the number of students that I've had and the number of complaints that you have.  As a percentage, and if they were true, nothing. [*sic*]"  *Id.*  at 263:4-7.

## 2. **Pertinent Documentary Evidence**

### a. *Written student statements regarding video tape incident (Exhibit 17)*

Exhibit 17, which was submitted by the administration and admitted by the Board, was handwritten statements from students obtained by former Principal McDonough in his investigation into the video tape incident.  *Id.* at 141-142; 449-457.  Vazquez objected to these statements as hearsay, complaining that he could not cross-examine them.  *Id.* at 141.  The Board overruled the objection.  *Id.* at 142:5-6.

The following are summaries of the student statements contained in Exhibit 17.

- ***Student S.G.*** reported that on April 24, 2012, Vazquez complained that he did not like her touching her hair during class because it was distracting.  *Id.* at 450.  He had warned her the day before that she should not mess with her hair during class.  *Id.*  She denied touching her hair.  *Id.*  Vazquez then set up the webcam, moved her to the front of the class, and aimed the camera at her.  *Id.*  He said that if it showed she was messing with her hair, he would give her an

office referral.  *Id.*  She believed she was recorded all class period.  *Id.*

- **_Student R.M._** stated that Vazquez complained in class that S.G. was playing with her hair.  *Id.* at 451.  Vazquez made S.G. move to the front of the class and pointed his camera at her to record her all class period.  *Id.*  R.M. said Vazquez recorded S.G. all class period.  *Id.*

- **_Student R.M._** reported that Vazquez had moved S.G. to the front of the class for twirling her hair, and video taped her.  *Id.* at 452.

- **_Student D.S._** wrote that S.G. was twirling her hair in class and Vazquez constantly asked her to stop.  *Id.* at 453.

- **_Student C.C._** noted that Vazquez moved S.G. to the front of the class to videotape the number of times she twirled her hair during class.  *Id.* at 454.

- **_Student J.F._** stated that when S.G. played with her hair, Vazquez told her that he was going to videotape her to show how many times she was doing that.  *Id.* at 455.

- **_Student V.V._** reported that Vazquez said he wished he could record how many times S.G. messed with her hair to show how distracting it was, and that he did record her.  *Id.* at 456.

- **_Student V.R._** wrote that Vazquez moved a girl to the front of

the class for messing with her hair. *Id.* at 457. He recorded her with his webcam for the whole class period. *Id.*

**b. *Written student statements regarding inappropriate comments (Exhibit 11)***

Exhibit 11, which was submitted by the administration and admitted by the Board, was handwritten statements from students obtained by Principal Villarreal in his investigation into Vazquez' comments to student N.N. about his manner of dress. *See* A.R. Vol. II at 413-438. Several of the statements were taken on or near the day of the incident in question, and some were taken a couple of months later during the grievance investigation. *Id.* Vazquez objected to all student statements as hearsay. *Id.* at 141, 146.

- ***Student N.N.*** drafted separate statements. *Id.* at 414, 417. In his first written statement, he reported generally that Vazquez asked him "unnecessary questions" about why he was wearing "this" or "that." *Id.* at 414. In his April 25 statement, he provided more specifics, noting that Vazquez asked him why he chose to wear suspenders and told him "how dumb" he looked in front of the class. *Id.* at 417. Vazquez stated, "It looks like your mom dressed you up." *Id.* N.N. further reported that the kids in the class laughed when Vazquez said these things, and then Vazquez asked N.N. if he wore those things to make himself

look stupid.  *Id.*

- ***Student K.S.*** reported that Vazquez had asked N.N., in front of the class, why he would wear a belt with suspenders.  *Id.* at 415.  N.N. appeared embarrassed.  *Id.*

- ***Student C.M.*** submitted two written statements.  *Id.* at 416, 418.  C.M. stated that Vazquez asked N.N. why he was wearing suspenders with a belt.  *Id.* at 416.  When N.N. did not answer, Vazquez stated in a sarcastic tone, "I asked you if you wore a belt and suspenders on purpose."  *Id.*  Vazquez then said he wanted to show N.N. how to properly answer a question, and had a student turn on and off a light.  *Id.*

- ***Student G.V.*** also submitted written statements.  *Id.* at 420-421, 424, 436.  G.V. reported that Vazquez surveyed the class about movies they may watch during the school year.  *Id.* at 421.  Someone suggested bringing popcorn, and G.V. said she would bring two bags – one for her and one to share.  *Id.*  Vazquez said, "Yeah, well it shows."  *Id.* at 420, 421.  G.V. was offended by his comment because he had implied that she was fat.  *Id.* at 420.  He apologized to G.V. at the end of class.  *Id.*  In another statement drafted by G.V., she also reported that Vazquez had told the class that he liked to go "clubbing" and if he ever showed up to first period in a bad mood, it was most likely because he was

hung-over. *Id.* at 424. G.V. also stated that E.F. had asked Vazquez for help with printing, and when Vazquez walked over to her, she said "cancel," referring to the computer. *Id.* at 436. Vazquez asked her if she had called him a name, and then made the class vote on whether she called him a name. *Id.* The class voted that she had said "cancel." *Id.*

- ***Student E.V.*** stated that she recalled Vazquez telling G.V. something in front of the class, which made her cry. *Id.* at 422. Vazquez asked E.V. if she "needed help coming out," implying she was gay in front of the class. *Id.* Vazquez referred to student A.M. wearing a tight outfit in front of the class and then asked a boy in the class if he thought she was pretty. *Id.* E.V. reported that Vazquez comes across as trying to be "cool" or relate to the students. *Id.* E.V. stated that Vazquez made comments to the class about going clubbing and coming to work hung-over. *Id.*

- ***Student A.M.*** reported that Vazquez made a comment to the whole class about A.M. being cute in a tight outfit when talking about her and a boy in the class competing for a job, which comment made her uncomfortable. *Id.* at 425. She further stated that Vazquez made comments to the class about going clubbing and getting hung-over. *Id.* She provided another written statement on May 3, 2013, in which she reported that student E.F. had asked Vazquez to help

her.  *Id.* at 437.  When Vazquez came to help her, E.F. said "cancel."  *Id.*  Vazquez made the class take a vote on whether E.F. had called him "asshole."  *Id.*  All the students agreed E.F. had only said "cancel."  *Id.*

- ***Student N.D.*** provided two separate written statements.  *Id.* at 426, 427.  In her statements, N.D. stated that Vazquez had told her that when he thinks of her it brings a smile to his face, which made her feel uncomfortable.  *Id.*

- ***Student I.M.*** shared that Vazquez had commented about a hypothetical of I.M., a male, and A.M., a female, going to a job interview and that for A.M. to get the job she would have to wear a "tight little outfit."  *Id.* at 427.  Vazquez told the class that if I.M. had certain certifications and A.M. did not, A.M. would need to dress in a tight outfit to qualify for the job.  *Id.*

- ***Student E.F.*** reported that when she wore a skirt to class, Vazquez asked if she was a cheerleader and told her that she looked nice when she wore dresses.  *Id.* at 429-434.  He told her that he had picked on her because she is his favorite student and winked at her.  *Id.*  On another occasion, she asked Vazquez for help on the computer, and when he said no, she tried to print out the computer lesson.  *Id.* at 429-434, 438.  When Vazquez started walking towards her, she asked if he was going to help her, to which he said "what does it look like?" *Id.* She then said, "Ok, cancel" because she cancelled her print job.  *Id.*  Vazquez

asked if she had just called him an "asshole." *Id.* He then made the class vote on whether she called him "asshole." *Id.*

On another occasion, he asked E.F. if she needed help "coming out," implying she was gay. *Id.* at 429-434. He told a male student he was handsome, and then repeatedly told the class that he was not gay. *Id.* On another occasion, he told that class that he once asked a girl to dance but she refused because she was a lesbian. *Id.* He said that lesbians should wear shirts saying they are lesbians. *Id.* He referred to E.F. as a "thesbo" after she had invited the class to a play she was in, referring to herself as a "thespian." *Id.*

E.F. stated that Vazquez told G.V. he could tell she liked food and compared another student to Santa Claus. *Id.* He also made the class vote on whether female student A.M. was pretty after he had asked a male student if he thought she was pretty and the boy did not want to answer. *Id.* Vazquez also told the class A.M. would need to wear a "tight little outfit" when applying for a job. *Id.* Vazquez told another female student that he wanted to see her if she ever came to school in yoga pants. *Id.*

Vazquez told the keyboarding class that it was not a required course so they could flip a coin to decide whether they had to take a final or not. *Id.* He also told the class that he hates teaching keyboarding. *Id.*

He told the class that he goes clubbing and discussed getting hangovers from clubbing. *Id.* He said if he did not come to class on Thursdays, it would be because he was hung-over. *Id.*

E.F. also reported that Vazquez sometimes would turn off their computer monitors in the middle of a timed typing test to discuss "unrelated life topics." *Id.*

E.F. also reported that Vazquez had made fun of N.N. for the way he was dressed. *Id.*

- **_Student J.T._** reported that Vazquez made the class vote on whether E.F. had said something to Vazquez, and the class voted that she had not. *Id*. at 435.

c. *Notice of Warning, March 5, 2013 (Exhibit 8)*

Exhibit 8, which was not objected to by Vazquez and was admitted into evidence, was the Notice of Warning received by Vazquez for comments he had made to his students. *See* A.R. Vol. II at 407-408. Specifically, Principal Villarreal noted that he had received a number of complaints concerning Vazquez' actions and comments towards students, including questioning a student about his manner of dress when no dress code violation had occurred. *Id.* Principal Villarreal pointed out Vazquez' commenting about a student's suspenders, telling a student "it shows" after she had mentioned eating a bag of popcorn, accusing a

student of calling him a name and having the class vote on it, referring to students "coming out," asking another student if a girl was pretty and telling students he goes clubbing and discussing hangovers. *Id.* Principal Villarreal directed him to cease making inappropriate comments in class and to use better judgment in his choice of words. *Id.* The principal instructed him to conduct himself in a professional manner and referred him to the Employee Handbook and ethical standards. *Id.*

### d. *Notice of Warning, April 30, 2012 (Exhibit 9)*

Exhibit 9, which was unobjected to and admitted into evidence, was the Notice of Warning that Vazquez received on April 30, 2012 for videotaping a student because she was playing with her hair. *See* A.R. Vol. II at 409-410. Principal McDonough issued the warning after speaking with Vazquez about the incident and after Vazquez admitted to him that he had "pretended" to videotape the student. *Id.* Principal McDonough warned him that it is never acceptable to videotape a student as a means of discipline, and directed him to follow the District's discipline management techniques set out in the Student Code of Conduct. *Id.*

### e. *Notice of Warning, April 13, 2012 (Exhibit 12)*

Exhibit 12, which was unobjected to and admitted into evidence, was the

Notice of Warning that Vazquez received on April 13, 2012 after showing the movie *Burlesque* in the classroom. *See* A.R. Vol. II at 439-440. In the Notice, Principal McDonough noted that Vazquez had admitted to showing the movie, that it was not in his lesson plans, he had not previewed it, and that he did not have permission to show it. *Id.* Principal McDonough directed Vazquez to obtain approval prior to showing movies, to detail it in his lesson plans, and to preview it prior to class. *Id.*

### f. *Appraisal*

Vazquez' April 27, 2013 performance appraisal was admitted into evidence without objection. *Id.* at 225, 331-335. In that appraisal, Vazquez received below expectations ratings on redirecting student behavior and on reinforcing positive student behavior. *Id.* He also received below expectations on communications with students and his classroom environment. *Id.* The appraiser noted that Vazquez had redirected students in an abrasive and sarcastic manner. *Id.* Also, the appraiser noted that Vazquez needed to improve on his interactions with students and redirect them in a positive manner. *Id.* In the appraisal, another area for Vazquez to improve on was ensuring his interactions with students were professional and respectful. *Id.*

**D.** *Board voted to nonrenew*

At the conclusion of the hearing, the Board voted to nonrenew Vazquez' term contract. *See* A.R. Vol. II at 281-282, 552-557.

**E.** *Appeal to the Commissioner*

On July 2, 2013, Vazquez filed his Petition for Review with the Commissioner, appealing the District's decision not to renew his contract and arguing that the District improperly admitted and relied on hearsay statements in its nonrenewal decision. *See* A.R. Vol. I at 1-4. The Commissioner denied Vazquez' appeal on August 21, 2013. *See* A.R. Vol. I at 5-24. In his decision, the Commissioner focused on whether a hearsay exception applied to the student witness statements. *See* A.R. Vol. I at 5. The Commissioner concluded that liberal exceptions to hearsay applied, and the student statements were admissible. *Id.* at 5-24. The Commissioner concluded there was substantial evidence to support the nonrenewal of Vazquez' contract. *Id.*

**F.** *Appeal to Trial Court*

Vazquez then filed his Original Petition with the district court of Travis County on October 13, 2013, alleging that the Board's decision was based entirely on hearsay statements by individuals who did not appear or testify at the hearing. *See* C.R. at 3-6. Vazquez claimed that the evidence did not constitute a valid basis

for nonrenewing his contract. *Id.* He requested that the trial court reverse and render judgment in his favor. *Id.*

All parties filed trial briefs, and the court held oral argument on September 2, 2014. *See* C.R. at 18-31, 32-103, 104-134, 135-148; *see generally* R.R. at 1-7.

After reviewing the record and hearing arguments, the trial court reversed the Commissioner's decision on September 3, 2014. *See* C.R. 152-54. The trial court held that liberal exceptions to the hearsay rule did not apply and the statutory right to cross-examine witnesses under §21.207(c) of the Education Code prevented the admission or consideration of the written student statements. *Id.* The trial court remanded the case to the Commissioner with instructions to reverse the Board's nonrenewal decision. *Id.*

On October 3, both the Commissioner of Education and Los Fresnos CISD timely filed their respective Notices of Appeal. *See* C.R. at 155-163. Appellant Los Fresnos CISD now timely files its Brief and asks that this Court reverse the trial court's judgment.

## SUMMARY OF THE ARGUMENT

Appellant Los Fresnos CISD asserts that the trial court improperly reversed the Commissioner's decision. Substantial evidence supported Los Fresnos CISD Board's decision to nonrenew Appellee Vazquez' teacher term contract, and the nonrenewal decision was not arbitrary or capricious.

The Rules of Evidence do not apply in a teacher term contract non-renewal hearing before a school board, as the Legislature did not specify that the Rules applied, like it did for hearings before an independent hearing examiner. Hearsay evidence is admissible and can support a finding of substantial evidence in a non-renewal hearing before a school board.

Even if the Rules of Evidence do apply, liberal exceptions apply to hearsay evidence in a teacher term contract non-renewal hearing, permitting the admission of the student witness statements in this case.

The right to cross-examine adverse witnesses permitted under Texas Education Code §21.207(c) does not prohibit the use of student written statements in a non-renewal hearing before a school board. The right to cross-examine witnesses means the right to question witnesses present at the time of the hearing. Public policy dictates against requiring minors to testify at a teacher's nonrenewal hearing.

Even if hearsay statements are not permitted in a non-renewal hearing before a school board, the non-hearsay evidence presented at Vazquez' non-renewal hearing supported a substantial evidence finding in favor of the Board's nonrenewal decision. In the alternative, if the student statements are not to be considered, the trial court should have remanded the case to the Commissioner to reconsider the evidence in light of the court's ruling.

## ARGUMENT

**A.**   *Standard Of Review*

A court can reverse the Commissioner of Education's decision only if the decision is not supported by substantial evidence or if the Commissioner's conclusions of law are erroneous.  *See* TEX. EDUC. CODE §21.307(f); *Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 562 (Tex. 2000); *McConnell v. Alamo Heights Indep. Sch. Dist.,* 576 S.W.2d 470, 475 (Tex. Civ. App. – San Antonio 1978, writ ref's n.r.e.).   The plaintiff bears the burden of proving that the Commissioner's decision was not supported by substantial evidence.   *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex. 1984); *Matthews v. Scott*, 268 S.W.3d 162, 172 (Tex. App. – Corpus Christi-Edinburg 2008, no pet.); *Miller v. Houston Indep. Sch. Dist.,* 51 S.W.3d 676, 680 (Tex. App. – Houston [1st Dist.] 2001, pet. denied).

"Substantial evidence means more than a mere scintilla; thus, the evidence may preponderate against the agency's decision, yet still amount to substantial evidence." *Matthews,* 268 S.W.3d at 172; *see Mireles v. Tex. Dep't of Pub. Safety,* 9 S.W.3d 128, 131 (Tex. 1991).  The test is whether reasonable minds could have reached the same conclusion as the Commissioner.  *See Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988), *cert. denied,* 490 U.S. 1080 (1989); *Nelson v. Weatherwax*, 59 S.W.3d 340, 343 (Tex. App.—Fort Worth

2001, pet. denied). If reasonable minds could have reached the same conclusion as the Commissioner, then the decision is supported by substantial evidence. *Nelson*, 59 S.W.3d at 343.

Whether substantial evidence exists to support an agency's determination is a question of law. *Montgomery Indep. Sch. Dist,* 34 S.W.3d at 566. Further, the substantial evidence standard of review is limited, intentionally giving great deference to the particular agency in its field of expertise. *Farris v. Fort Bend Indep. Sch. Dist.*, 27 S.W.3d 307, 311 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The Court may not substitute its judgment for that of the Commissioner and "may consider only the record on which the Commissioner reached his decision." *State v. Pub. Util. Comm'n,* 883 S.W.2d 190, 203 (Tex. 1994). The agency decision is presumed to be valid, and Appellant has the burden to prove its invalidity. *Id.*; *Farris,* 27 S.W.3d at 311; *see Brinkmeyer*, 662 S.W.2d at 956. This burden cannot be met "merely by showing that the evidence preponderates against the agency decision." *Texas Educ. Agency v. Goodrich Indep. Sch. Dist.,* 898 S.W.2d 954, 957 (Tex. App. – Austin 1995, writ denied); *accord Mireles,* 9 S.W.3d at 131.

With respect to conclusions of law, the Commissioner's reasoning is immaterial if the conclusion reached is correct. *See Texas Employment Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962). The Court must uphold the

Commissioner's decision on any legal basis shown in the record. *See Board of Trustees of Employees Ret. Sys. v. Benge*, 942 S.W.2d 742, 744 (Tex. App.—Austin 1997, writ denied). The issue before the Court is not whether the agency reached the correct conclusion, but whether there is some basis in the record for its action. *See City of El Paso v. Public Util. Com'n*, 883 S.W.2d 179, 185 (Tex. 1994); *see also Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). A review of this case under the substantial evidence standard establishes that the decision by the District's Board of Trustees, and the affirmation of that decision by the Commissioner of Education, were proper. Substantial evidence supported the Board's decision and its decision was not arbitrary and capricious. The trial court should have affirmed the Commissioner's decision. This Court should reverse the trial court's decision.

**B.** ***The Rules of Evidence do not apply***

      1. *Differences between a nonrenewal and termination hearing*

Because this is a nonrenewal case, the nonrenewal hearing was governed by §21.207 of the Education Code. Under §21.207 (b), the nonrenewal hearing "must be conducted in accordance with rules adopted by the board," unless the board elected to use the process established under Subchapter F, which is used for contract termination proceedings. *See* TEX. EDUC. CODE §21.207(b). Here, it is undisputed that the District established its own non-renewal hearing rules, as

contemplated by §21.207(b), and the Board itself heard the non-renewal. *See* A.R. Vol. II at 125, 291-298.

The statute requires that the Board consider the record of the hearing and allow each party to present oral argument. *See* TEX. EDUC. CODE §21.207 (b-1). The statute further provides that the teacher may:

(1) be represented by a representative of the teacher's choice;
(2) hear the evidence supporting the reason for nonrenewal;
(3) cross-examine adverse witnesses; and
(4) present evidence.

*Id.* at §21.207 (c).

Unlike nonrenewal procedures, termination procedures have more specific statutory requirements. *See generally* TEX. EDUC. CODE §21.251-21.260. For example, termination hearings are held before a certified hearing examiner, instead of before the Board as in nonrenewal hearings. *Id*. at 21.251-21.255. The hearing examiner may issue subpoenas. *Id.* at §21.255. There are no subpoena powers given to the Board in nonrenewal hearings. Further, for termination hearings, the Legislature specifically stated that the "Texas Rules of Evidence apply at the hearing." *Id.* at §21.256 (d). There is not a similar provision for nonrenewal hearings. The statute also gives the teacher the right to:

(1) be represented by a representative of the teacher's choice;
(2) hear the evidence on which the charges are based;
(3) cross-examine each adverse witness; and

(4) present evidence.

*Id.* at §21.256 (b). The statute mandates that the termination hearing must be conducted in the same manner as a bench trial. *Id.* at §21.256 (e).

Because the Legislature drafted the nonrenewal and termination procedures differently it clearly did not intend for the Rules of Evidence to apply in nonrenewal hearings.

2. *Statutory construction of nonrenewal procedures*

a. *Legislative intent*

When construing a statute, the court's primary objective is to determine and give effect to the Legislature's intent. *See* TEX. GOV'T CODE §312.005; *TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 438 (Tex. 2011). To discern the Legislature's intent, the court begins with the language of the statute itself and is bound by the statute's assigned meaning of particular words. *See Combs,* 340 S.W.3d at 438; *Texas Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex. 2002); *see also* TEX. GOV'T CODE §312.002. Undefined terms are given their ordinary meaning, unless a different or more precise definition is apparent from the statute's context. *Combs,* 340 S.W.3d at 438; *In re Hall,* 286 S.W.3d 925, 928-29 (Tex. 2009). Statutes should be considered as a whole rather than by their isolated provisions. *See Combs,* 340 S.W.3d at 438.

It is presumed that the Legislature purposefully chose the words it used in the statute, and that the Legislature purposefully did not choose words that were omitted. *Id.*; *see also In Re M.N.,* 262 S.W.3d 799, 802 (Tex. 2008). That is, "each word in the statute was put there for a purpose and that each word not in the statute was omitted for a purpose." *In re General Elec. Co.,* 271 S.W.3d 681, 687 (Tex. 2008). "When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded." *Laidlaw Waster Sys. (Dallas) Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex. 1995); *see Hardy v. Matter,* 350 S.W.3d 329, 332 (Tex. App. – San Antonio 2011, pet. dism'd).

If the Legislature's intent is not clear in the plain language of the statute, the court "may resort to additional construction aids, such as the objective of the law, the legislative history, the common law or former statutory provisions, including laws on the same or similar subject, and the consequences of a particular construction." *Bruington Engineering, Ltd v. Pedernal Energy, L.L.C.,* - S.W.3d - , No. 04-13-558-CV, 2014 WL 4211024 at *3 (Tex. App. – San Antonio Aug. 27, 2014, no pet.); *see Galbraith Engineering Consultants, Inc. v. Pochuca,* 290 S.W.3d 863, 867-68 (Tex. 2009).

Because the Legislature purposefully and explicitly indicated that the Rules of Evidence apply to nonrenewal and termination hearings before an administrative law judge, but purposefully did not do so for nonrenewal hearings before a school board, the Rules of Evidence clearly do not apply to nonrenewal hearings before the Board. A school board is made of 7 lay persons, elected by their community, with varying degrees of sophistication and education levels. Most school board members are not attorneys or otherwise versed in legal procedures or evidentiary matters and should not be expected to know the legal requirements concerning evidence, hearsay, or exceptions to the hearsay rules. *See Boykins v. Fairfield Board of Educ.,* 492 F.2d 697, 701 (5th Cir. 1974), *cert. denied* 420 U.S. 962 (1975). As stated by the Fifth Circuit, the court should "decline to place upon a board of laymen the duty of observing and applying the common-law rules of evidence." *Id.*

### b. *Commissioner's interpretation*

Additionally, courts typically defer to the Commissioner of Education's interpretation of provisions in the Education Code, unless the interpretation is "plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *See Combs,* 340 S.W.3d at 438. The Commissioner's interpretation "is entitled to serious consideration." *Id.* This is especially so when there is

vagueness, ambiguity, or "room for policy determinations" in the statute or regulations. *Id.*

The Commissioner has also interpreted the Education Code as not requiring the Rules of Evidence to apply at a nonrenewal hearing before a School Board. *See Green v. Brazosport Indep. Sch. Dist.,* Dkt. No. 083-R1-0512 (Comm'r Educ. 2012)[2]; *Dews v. Tyler Indep. Sch. Dist.,* Dkt. No. 053-R1-0508 (Comm'r Educ. 2008); *see also Whitaker v. Moses,* 40 S.W.3d 176, 179 (Tex. App. – Texarkana 2001, no pet.); *Wilson v. Board of Education,* 511 S.W.2d 551, 555-56 (Tex. App. – Fort Worth 1974, writ ref'd n.r.e) (finding admission of hearsay evidence before school board did not warrant reversal because such board is not "confined to the niceties of a trial"); *Boykins,* 492 F.2d at 701 (holding due process was not violated by relying on hearsay statements in school disciplinary expulsion hearing).

Thus, based on the rules of statutory construction and the Commissioner's interpretation of the applicable laws, the Rules of Evidence do not apply in nonrenewal hearings before a school board. The trial court erred in applying the hearsay rule to exclude the student statements in this case.

**C.**     ***Hearsay evidence can support substantial evidence***

---

[2] The Commissioner's decisions are located at http://tea.texas.gov/commissioner_decisions/ (last visited January 12, 2014).

Hearsay evidence can be proper evidence in a nonrenewal hearing and can support a finding of "substantial evidence." Notably, a teacher is not entitled to due process in a nonrenewal hearing; a teacher does not have a protected property interest in a contract beyond its term. *See* TEX. EDUC. CODE §21.204 (e); *Stratton v. Austin Indep. Sch. Dist.,* 8 S.W.3d 26, 29-30 (Tex. App. – Austin 1999, no writ). Thus, there are no due process concerns regarding the admissibility or use of hearsay in a nonrenewal hearing. As discussed below, the Fifth Circuit as well as sister state courts permit the use of hearsay evidence to support findings of substantial evidence in administrative proceedings. The Texas state cases that have held otherwise are not applicable to the case at bar.

1. *Texas school cases*

In the Fort Worth Court of Appeals *Wilson* case, a teacher appealed the school board's decision to move him from a continuing contract to a probationary contract. *Wilson,* 511 S.W.2d at 552 He appealed the board's decision to the Commissioner of Education and then to the trial and appeals courts. *Id.* at 552-554. In deciding to change the teacher's contract status, the board admitted into evidence hearsay evidence. *Id.* at 554-556. On appeal, the Fort Worth Court of Appeals found that the school board could not be confined to "the niceties of a trial," and that the board's decision was not reversible merely because hearsay

evidence had been admitted or considered by the board.  *Id.* at 555-556.  "Where hearsay evidence has been received by the board, it is the duty of the trial court…to 'test' the whole of the evidence."  *Id.*  The court held that the presence of hearsay did not make the board's decision arbitrary or capricious.  *Id.*

Only one Texas state case, from the Texarkana Court of Appeals, was found concerning the use of hearsay specifically at a nonrenewal hearing.  *See Peaster Indep. Sch. Dist. v. Glodfelty,* 63 S.W.3d 1 (Tex. App. – Texarkana 2001, no pet.).  As set out below, *Glodfelty* is not applicable here.  No other Texas cases were found that specifically address the admissibility of hearsay and whether hearsay evidence can constitute substantial evidence in a nonrenewal hearing.  It appears to be a matter of first impression for this Court.

In *Glodfelty,* two teachers were nonrenewed based on allegations that they had inappropriate relationships with a student.  *Glodfelty,* 63 S.W.3d at 3. The sole reason given for proposing the nonrenewals was Board policy prohibiting "[a]ny activity…that because of publicity given it, or knowledge of it among students, faculty, and community, impairs or diminishes the employee's effectiveness in the District."  *Id.* at 5.   At the nonrenewal hearing before the Board, the student who accused the teachers of the misconduct did not testify.  *Id.* at 6.  Instead, the superintendent testified as to what the student had reported to him.   *Id.*

Additionally, other witnesses testified as to the community's knowledge of the allegations and its belief concerning the teachers' impaired effectiveness. *Id.* The school district nonrenewed the teachers' contracts. *Id.*

On appeal, the Commissioner upheld the nonrenewals, holding that the District did not need to prove that the teachers had engaged in inappropriate activity, but only the community's reaction and diminished effectiveness of the teachers. *Id.* at 8. The appellate court disagreed, holding that under the Board's policy, the District was required to prove that inappropriate activity between the student and teachers had occurred, not just that allegations had been made. *Id.* at 9-10. The court found that the school's attorney had stated throughout the nonrenewal hearing that it was not offering the testimony concerning the student's allegations for the truth of the matters asserted, but to show its widespread publicity. *Id.* Because the attorney had so limited the evidence, it could not be used to prove an inappropriate activity had occurred. *Id.* The court further noted that rumors and gossip could not suffice as evidence to support a nonrenewal; according to the court, allowing nothing more than rumors to support a nonrenewal would violate notions of fairness. *Id.* at 10, 14.

The *Glodfelty* case is not controlling and is distinguishable from the case at bar. In *Glodfelty,* the court assumed without discussion that the Rules of Evidence

applied at nonrenewal hearings and applied the Rules concerning hearsay. *Id.* at 9. As noted *supra,* the Rules do not apply to hearings before a school board. Additionally, the school district in *Glodfelty* had specifically limited the hearsay testimony to prove only the publicity within the community and not the allegations of inappropriate activity itself. *Id.* at 9-10. The court's concerns centered primarily on the unfairness of a nonrenewal based on mere rumor or gossip. *Id.* at 14. Here, the nonrenewal decision was not based on rumors, gossip, or community reactions. The nonrenewal was based on corroborating student statements, whom the school investigators found to be telling the truth as well as Vazquez' own admissions. *Glodfelty* is not controlling and is inapplicable here. As in *Wilson,* the admission of hearsay does not warrant reversal of the board's decision.

2. *Other Texas cases not applicable*

Some Texas state courts have addressed whether hearsay evidence can constitute "substantial evidence" in other types of administrative hearings. *See Lewis v. Southmore Savings Ass'n,* 480 S.W.2d 180, 186 (Tex. 1972) (holding hearsay rule applies in savings and loan commissioner administrative hearings); *Benson v. San Antonio Savings Ass'n,* 374 S.W.2d 423, 428-29 (Tex. 1963) (holding hearsay evidence could not support substantial evidence finding in savings and loan case); *Railroad Comm'n v. Southern Pacific Co.,* 468 S.W.2d

125, 129 (Tex. App. – Austin 1971), writ ref'd n.r.e., 471 S.W.2d 39 (Tex. 1971) (concluding hearsay could not be used to support substantial evidence finding in Railroad Commission case); *Gerst v. Gibraltar Savings Ass'n,* 413 S.W.2d 718, 723 (Tex. Civ. App. – Austin 1967), writ ref'd n.r.e., 417 S.W.2d 584 (Tex. 1967) (finding hearsay evidence had no probative force and was unreliable, and therefore could not support substantial evidence in savings and loan case).

Although these cases discussed hearsay in the context of substantial evidence, they are sufficiently distinguishable to be inapplicable here. For instance, the savings and loan and railroad cases follow a different set of administrative guidelines and review procedures. The savings and loan administrative procedures specifically follow the Rules of Evidence, allow issuance of subpoenas, and have hearing officers preside over the proceedings. *See* TEX. FINANCE CODE §11.202 (hearing officer); 7 TEX. ADMIN. CODE §9.18 (subpoenas), §9.26 (Rules of Evidence). The Railroad commission procedures likewise follow the Rules of Evidence and allow the issuance of subpoenas. *See* 16 TEX. ADMIN. CODE §1.85 (subpoenas), §1.101 (Rules of Evidence).

Unlike other administrative agencies, school boards lack subpoena powers and the Rules of Evidence do not apply to hearings before them. Moreover, the school board is made up of lay people, who are not sophisticated in rules of

evidence as a hearing officer would be. The inapplicability of the Rules of Evidence, the make-up of a school board, the lack of a property interest in a contract renewal, and the lack of subpoena power differentiate nonrenewal cases from the typical administrative agency cases.

Additionally, a greater public policy concern arises in the context of nonrenewal cases that are based on teacher-student interactions, especially when the minor students are the only witnesses to the incidents in question. A ruling that written statements from students are not admissible based on hearsay is tantamount to requiring minors to testify before a school board in order for a school to even be able to nonrenew a teacher. Due to the unique nature of teacher nonrenewal hearings, hearsay evidence – especially statements from minors - clearly should be allowed in nonrenewal hearings before a school board.

3. *Fifth Circuit cases*

In the Fifth Circuit, it is well-settled that hearsay evidence is admissible in administrative proceedings. *See School Bd. of Broward Co., Fla. v. Department of Health, Education, and Welfare,* 525 F.2d 900, 904-05 (5th Cir. 1976). Even though the evidence is admissible in administrative hearings, the next consideration is the weight to given such evidence in a "substantial evidence" review. *Id.*

The Fifth Circuit has rejected a per se rule that hearsay evidence cannot constitute substantial evidence. *Id.* at 906 (citing *Richardson v. Perales,* 402 U.S. 389 (1970)). Instead, the Court looks at factors that would "assure underlying reliability and probative value" of the hearsay evidence to determine whether the hearsay constitutes substantial evidence. *Id.; see Young v. U.S. Dep't of Agriculture,* 53 F.3d 728, 730 (5th Cir. 1995)(noting that in "determining whether hearsay can constitute substantial evidence 'we must look to those factors which 'assure underlying reliability and probative value'"). The inability to procure testimony, such as lack of subpoena power, "does demand that we be more flexible by allowing an administrative determination to rest on the only available evidence." *School Bd. of Broward Co.,* 525 F.2d at 907. Additional factors the Court considers are whether the witnesses had an interest in the controversy and whether the hearsay evidence was controverted. *Id.*

4. *Sister state courts*

Several sister state courts allow the use of hearsay evidence in teacher contract termination cases. *See, e.g., Board of Directors of Ames Community Sch. Dist. v. Cullinan,* 745 N.W.2d 487, 494 (S. Ct. Iowa 2008) (upholding teacher termination based on student and parent complaints made to principal, although reports were hearsay); *Hierlmeier v. North Judson-San Pierre Bd. of Sch. Trustees,*

730 N.E.2d 821 (Ind. Ct. App. 2000) (affirming school's decision to cancel teacher's contract based on testimony of school counselor concerning reports she had received from students); *Doty v. Tupelo Pub. Sch. Dist.,* 751 So.2d 1212, 1216 (Miss. Ct. App. 1999) (noting Mississippi statute permits hearsay evidence in teacher nonrenewal hearings). The Indiana Court of Appeals found that allowing the hearsay testimony of students in teacher contract proceedings is more compelling than in typical administrative cases; the interest of protecting students from having to testify in the presence of their peers or teachers justifies the admission of such hearsay testimony. *See Hinkle v. Garrett-Keyser-Butler Sch. Dist.,* 567 N.E.2d 1173, 1178 (Ind. Ct. App. 1991).

In *Cullinan,* several parents and students filed written complaints against the plaintiff coach about his demeanor towards student athletes. *Cullinan,* 745 N.W.2d at 489-90. The athletic director and then later the principal investigated the multiple complaints concerning the coach. *Id.* The superintendent recommended that the Board terminate the coach's teaching contract, which it did. *Id.* at 493.

On appeal, the court upheld the termination decision. *Id.* 498. The court found that the hearsay evidence of the parent and student claims was admissible, and that a multi-factor test applied to determine how much weight should be accorded the hearsay testimony. *Id.* at 494. The court took into account the

following factors: the circumstances of the case, the credibility of the witnesses, the credibility of the declarant, the circumstances in which the statements were made, and the consistency of the statements with other corroborating evidence. *Id.* In finding the hearsay evidence reliable, the court noted that the administrative reports had been drafted as part of the school administrator's duties; the writers of the complaints had signed them and were identifiable, allowing the coach the ability to call them as witnesses or otherwise cast doubt on their motivations; the statements were made under circumstances tending to establish credibility, being made shortly after the event in question and made to trusted officials; and the hearsay testimony was consistent among the witnesses. *Id.* These factors weighed in favor of the reliability of the hearsay statements, permitting their use in the termination hearing. *Id.*

Here, as discussed in the sister state courts, a nonrenewal hearing is a unique administrative proceeding. Often, nonrenewals are based on a teacher's behaviors or conduct towards or in the presence of minor students – many of which are elementary-aged. The court should not require minor children to testify at every nonrenewal hearing in which students are involved. The interest of protecting students from having to testify live in the presence of a teacher accused of misconduct justifies allowing written student statements in such hearing in lieu of

live testimony. *See Hinkle,* 567 N.E.2d at 1178. It seems implausible that a court would tie the hands of a school district and force it to call a child to the stand to testify against her own teacher, putting the child in the uncomfortable position of testifying against her teacher and being questioned by attorneys, in essence putting the child in the middle of a legal fight between her teacher and her school. Public policy dictates against doing so, especially in the absence of a protected due process right of the teacher.

Moreover, in the case at bar, the circumstances surrounding the written statements weigh in favor of their reliability and use in this proceeding. The statements were obtained by the school principal and another administrator, whose duty it was to investigate such complaints. The administrators asked open-ended questions and determined the students were credible. The students wrote their own statements and signed them; they were identifiable. Vazquez received copies of the statements before the hearing, and could have called any of the students or other witnesses to cast doubt on their credibility or motives. The statements were in close proximity to events in question. Importantly, the various students' statements were consistent.

Additionally, Vazquez did not deny all of the allegations made by the students. He admitted to "pretending" to record a student. He also admitted to

talking to N.N. about his suspenders, and testified that he "did not remember" some of the other incidents that were alleged, such as having the class vote if a student called him "asshole," turning on and off the light, or asking a male student if a female student was pretty.  Vazquez did not testify that any of these students had ulterior motives or otherwise were not credible.  These factors justify a finding on reliability and probative value to the statements.

The trial court erred in not considering the student statements substantial evidence supporting nonrenewal.  Accordingly, the trial court's judgment should be reversed and the Commissioner's decision affirmed.

**D.** ***Even if the Rules of Evidence apply, liberal exceptions apply to hearsay evidence***

Even if the Rules of Evidence apply or the hearsay rule otherwise applies to what may used as "substantial evidence," which the District denies, the trial court should have applied the liberal exceptions for hearsay in a nonrenewal hearing.  In *Lewis,* the Texas Supreme Court stated that "in administrative hearings considerable discretion is permitted in allowing evidence to be introduced by virtue of the liberal exceptions to the rule." *Lewis,* 480 S.W.2d at 186.

Additionally, the Commissioner has interpreted the Education Code as permitting liberal exceptions for hearsay evidence in nonrenewal proceedings, and

his interpretation is entitled to great deference. *See Combs,* 340 S.W.3d at 438.

The liberal exceptions applied by the Commissioner in this case are set out in the

Administrative Procedures Act. *See* TEX. GOV'T CODE §2001.081. The hearsay

evidence may be considered if it is (1) necessary to ascertain acts not reasonably

susceptible of proof under the rules, (2) not precluded by statute, and (3) of a type

on which a reasonably prudent person commonly relies. *Id.*

These exceptions also comport with the standards as set out by the Fifth

Circuit in other administrative contexts. That is, factors that would "assure

underlying reliability and probative value" should determine whether the hearsay

constituted substantial evidence. *School Bd. of Broward Co.,* 525 F.2d at 904-05.

These factors include (1) whether the parties had the ability to procure testimony,

such as through subpoena power, (2) whether the witnesses had an interest in the

controversy, and (3) whether the hearsay evidence was controverted. *Id.* Other

reliability factors, as discussed in sister state courts, such as (1) circumstances of

the case, (2) circumstances in which the statements were made, and (3) consistency

of the statements with corroborating evidence dictate towards the admissibility and

weight of the student statements. *See Cullinan,* 745 N.W.2d at 494.

Using the factors under §2001.081, the student statements meet the

requirements for the administrative exception to hearsay. First, the students'

statements are not reasonably susceptible to proof, in that the District lacked subpoena power to compel their attendance. Additionally, as discussed *supra,* policy considerations of not forcing minor children to testify against a teacher and be cross-examined dictate against making their live testimony required.

Second, no statute precludes the admission of student statements. Additionally, the third factor, whether the statements are of a type on which a reasonably prudent person commonly relies, is met here. The statements were taken as part of the school investigation into the complaints against Vazquez. The investigators asked open ended questions and selected students randomly from the class rosters. There was no evidence of any conspiracy or ulterior motive of the students. It was reasonable for the administrators to rely on the statements in conducting the investigation and making conclusions and recommendations based on those statements. *Cf. Brauninger v. Motes,* 260 Fed. Appx. 634, 636-37 (5th Cir. 2007) (holding manager's report, which contained witness statements, was admissible since it showed what the manager relied on in making his employment discharge recommendation), *cert. denied,* 553 U.S. 1065 (2008); *Broughton v. Livingston Indep. Sch. Dist.,* No. 9:08-CV-175, 2010 WL 4453763 at *4 (E.D. Tex. Nov. 3, 2010) (allowing written student statements into evidence over hearsay

objection because such statements reflect what was reported to school officials and information relied on in making termination recommendations).

Additionally, the reliability factors delineated by the Fifth Circuit and sister state courts also are met here. Here, the students wrote their own statements, signed them, and were identifiable. Vazquez could have asked them to testify, had other students testify to contradict the statements, put on evidence concerning the motives or credibility of the students, or otherwise demonstrated the falsity of the allegations. *See Cullinan,* 745 N.W.2d at 494.

The trial court erred in not applying the liberal exceptions to the hearsay rule. The student statements met the liberal exceptions to the hearsay rule applicable to administrative hearings. This Court should reverse the trial court and affirm the Commissioner's decision.

**E.** ***The right to cross-examine adverse witnesses under Texas Education Code §21.207(c) does not prohibit the use of hearsay statements in a nonrenewal hearing before a school board***

In its order, the trial court found that allowing the student statements into evidence would violate § 21.207(c) of the Education Code, which permits teachers to cross-examine adverse witnesses. The District contends that the right to cross-examine witnesses, as contemplated in the statute, means those witnesses

physically present and called to testify at the hearing. The admission of the student statements did not violate that provision.

No Texas cases were located interpreting the provisions of Education Code §21.207(c) concerning the cross-examination of witnesses. Other state and federal courts have interpreted the right to "cross-examine adverse witnesses" as those witnesses physically present at the hearing, and thus admitted hearsay statements into evidence. This interpretation is valid, especially in cases such as this one where neither party can subpoena witnesses in a nonrenewal hearing before a Board. In the Tenth Circuit, the court found that a teacher's right to cross-examine adverse witnesses in her termination hearing was not violated when the teacher knew the identities of the persons who had made the out of court statements, but did not request those witnesses' attendance at the hearing. *W. v. Grand Cnty.*, 967 F.2d 362, 369 (10th Cir. 1992). Under those circumstances, the court held that the teacher could not complain of her inability to confront the adverse witnesses. *Id.; Accord Bradley v. Colonial Mental Health and Retardation Services Board,* 856 F.2d 703, 708-10 (4th Cir.1988) (denying employee's due process claim based on right to confront adverse witnesses when employee knew identity of accusers, failed to call them as witnesses, and did not show any restrictions to calling them as witnesses).

Interpreting a similar statutory provision, an Alabama court found that the statutory right to confront adverse witnesses does not preclude the admission of hearsay in a teacher contract hearing. *Wright v. Marsh*, 378 So. 2d 739, 741-42 (Ala. Civ. App.) *writ denied sub nom. Ex parte Marsh*, 378 So. 2d 742 (Ala. 1979). The court rejected the teacher's argument that allowing hearsay testimony violated her statutory right of cross-examination. *Id.* Because there was no statute preventing the consideration of hearsay in such administrative hearings, the Board could consider hearsay evidence and doing so did not violate the statutory right to cross-examine witnesses. *Id.*

Here, Vazquez was provided copies of the student statements prior to the nonrenewal hearing, he knew the names of the students providing the statements, he was afforded the opportunity to challenge the statements directly to determine whether inconsistencies existed, and he had the opportunity to challenge the interrogation techniques used in the investigation process. He was given the opportunity to cross-examine all witnesses who appeared at the hearing. The spirit and the letter of the law were met in this case. Moreover, as discussed *supra,* public policy dictates against requiring children to testify in nonrenewal proceedings, placing them in the middle of their teacher and the school or otherwise having to face their teacher who has been accused of misconduct.

As in the sister court cases considering a similar statutory provision, Vazquez' statutory right to cross-examine witnesses was not violated. This was not a due process hearing; Vazquez had no property interest or due process rights. He was afforded all of his Chapter 21 statutory rights in the nonrenewal process. The trial court erred in finding that the consideration of the student statements violated §21.207.

**F.** ***Even if hearsay statements are not permitted, the non-hearsay evidence constituted substantial evidence supporting the Board's decision***

Even if the students' written statements are not considered for substantial evidence purposes, the non-hearsay evidence constituted substantial evidence supporting the Board's decision. Vazquez admitted that he showed the movie *Burlesque* in class, he had not first previewed the movie, he did not ask permission to show it, and he did not include it in his lesson plans for that day. *See* A.R. Vol. II at 242-245, 264. He acknowledged he was written up for the incident. *Id.* at 245. He further admitted that he indeed did use a web camera to record a female student in his class as a means of corrective discipline, albeit he "pretended" to video tape her. *Id.* at 233-234. Regardless of whether it was because she was twirling her hair, as the students said, or simply because she was "off-task" as

Vazquez claimed, he conceded he had pretended to record her in an attempt to get her to conform her behavior. *Id.* He was written up for this incident.

Additionally, Vazquez acknowledged that he indeed did confront student N.N. about his wearing suspenders with a belt, when such was not a dress code issue. *Id.* at 247-249, 266. He further admitted to having a student turn off and on the lights as a means to illustrate how to answer a question when asked, but could not remember if he had done so when N.N. did not answer his question about the suspenders. *Id.* at 249-250.

Principal Villarreal testified that he conducted an investigation into the allegations concerning Vazquez. He met with the students involved and found them to be credible and telling the truth. Based on his interviews with the students and his conversation with Vazquez, he concluded that Vazquez indeed did speak with students in an inappropriate, humiliating and intimidating manner; Ms. Amaro-Sibaja reached the same conclusion. *See Bauninger,* 260 Fed. Appx. at 636-37 (investigator's findings used to support termination); *see also Broughton,* 2010 WL 4453763 at *4.

When confronted at the hearing about some of the incidents alleged with the students, Vazquez did not deny that they occurred; instead, he could not remember if he told G.V. "well it shows" in reference to her eating popcorn, he could not

remember if he accused a student of saying "asshole" and had the class vote on it, and he could not remember if he asked a boy if a girl in the class was pretty. *Id.* at 254, 256-257.

Additionally, Vazquez' April 2013 evaluation, which was admitted without objection, showed that he received below expectations ratings on redirecting disruptive behavior and reinforcing desired behaviors. *Id.* at 331-335. The evaluator noted Vazquez at times had redirected students in an abrasive and sarcastic manner. *Id.* The appraisal also noted that Vazquez needed to improve on ensuring his interactions with students were professional and respectable. *Id.*

Thus, in a one year period, Vazquez had received three Notices of Warning concerning his poor judgment and unprofessional behavior with students as well as received an appraisal in which it was noted that he was abrasive and sarcastic to students in the classroom. His admissions along with his failure to deny some of the unprofessional behavior (instead, he "did not remember" them happening) are substantial evidence supporting the Board's decision to nonrenew his contract. Moreover, his admissions combined with administrators' conclusions from their investigation also constitute substantial evidence supporting the nonrenewal – even without the admission of the students' written statements. As a result, the trial

court erred in finding a lack of substantial evidence to support the Board's decision without the students' statements as evidence.

**G.** ***In the alternative, if the Court finds that hearsay evidence should have been excluded, the case should be remanded to the Commissioner for further findings based on the admissible evidence.***

In the alternative, if the Court finds that the student statements should have been excluded or that they cannot be considered for purposes of substantial evidence, the Court can remand the case to the Commissioner for further findings. When an appellate court finds that hearsay was improperly admitted, the proper course is to remand the case for a new trial. *Mary Lee Foundation v. Texas Employment Comm'n,* 817 S.W.2d 725, 729 (Tex. App. – Texarkana 1991, writ denied); *see also Yselta Indep. Sch. Dist. v. Meno,* 933 S.W.2d 748, 753-54 (Tex. App. – Austin 1996, writ denied) (remanding case to Commissioner for reconsideration when improper standard of review was applied); *Amarillo Indep. Sch. Dist. v. Meno,* 854 S.W.2d 950, 958-59 (Tex. App. – Austin 1993, writ denied) (reversing trial court with instructions to remand to Commissioner for further proceedings). The trial court erred by remanding with instructions to the Commissioner to reverse the Board's decision. When the trial court excluded the student statements from consideration, the trial court should have remanded the case with instructions to reconsider the evidence in light of the court's ruling. If

this Court decides the student statements were not admissible and decides not to consider the remaining evidence for substantial evidence purposes, the Court should remand the case to the Commissioner for reconsideration of the evidence in light of the Court's ruling.

## CONCLUSION AND PRAYER

This Court must reverse the trial court's judgment and affirm the Commissioner's decision, upholding the nonrenewal decision.

WHEREFORE, PREMISES CONSIDERED, Appellant Los Fresnos Consolidated Independent School District prays that this Court reverse the trial court's Order and affirm the Commissioner's decision. Appellant requests that the Court grant all such other and further relief, special or general, at law or in equity, to which Appellant shows itself justly entitled.

Respectfully submitted,

**WALSH, ANDERSON, GALLEGOS,
GREEN & TREVIÑO, P.C.
STACY T. CASTILLO**
State Bar No. 00796322
scastillo@wabsa.com
**D. CRAIG WOOD**
State Bar No. 21888700
cwood@wabsa.com
**ELIZABETH G. NEALLY**
State Bar No. 14840400
eneally@wabsa.com

100 N.E. Loop 410, #900
San Antonio, Texas 78216
(210) 979-6633
(210)979-7024 (telecopier)

/s/ Stacy T. Castillo
STACY T. CASTILLO
State Bar No. 00796322

ATTORNEYS FOR APPELLANT
LOS FRESNOS CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing Brief of Appellant Los Fresnos Consolidated Independent School District was on this 16th day of January 2015, sent by email and certified mail, return receipt requested to:

Mark W. Robinett
Brim, Arnett, Robinett & Conners, P.C.
2525 Wallingwood Drive, Building 14
Austin, TX 78746
mrobinett@brimarnett.com

Jennifer Hopgood
Nichole Bunker-Henderson
Assistant Attorneys General
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Jennifer.Hopgood@texasattorneygeneral.gov
Nichole.Bunker-Henderson@texasattorneygeneral.gov

/s/ Stacy T. Castillo
STACY T. CASTILLO

## **RULE 9.4 (i) Certification**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4 (i)(1), is 12,861.

**/s/ Stacy Tuer Castillo**
**STACY TUER CASTILLO**

# APPENDIX

Commissioner's Decision ..............................................................................A

Trial Court's Final Judgment ........................................................................B

Texas Education Code §21.207 .....................................................................C

# APPENDIX A

| | | |
|---|---|---|
| JORGE VAZQUEZ | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| LOS FRESNOS INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Jorge Vazquez, complains of the decision of Respondent, Los Fresnos Independent School District, to nonrenew his term contract. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by Robb D. Decker, Attorney at Law, San Antonio, Texas.

In the present case, the district's decision to nonrenew Petitioner's term contract is affirmed. This case concerns what exceptions to the hearsay rule apply when a school district hears a proposal to nonrenew a term contract and whether the fact that there were student and parent complaints is alone sufficient to nonrenew a term contract.

In the local record there are written student statements that constitute hearsay that were admitted over a hearsay objection. The issue is whether a hearsay exception applies to the documents. Petitioner contends that the Texas Rules of Evidence apply. Respondent contends that they do not. The Commissioner has not previously ruled on the issue of whether the liberal exceptions to the hearsay rule that generally apply to administrative hearings apply when a school board hears a case concerning the proposed nonrenewal of a term contract. However, in several cases the Commissioner applied the exceptions to the hearsay rule found in the Texas Rules of Evidence and did not consider

062-R1-07-2013

the liberal exceptions to the hearsay rule that normally apply to administrative hearings. In the past, the Commissioner has excluded written or reported student statements as hearsay. Whether the liberal administrative exceptions to the hearsay rule apply, needs to be considered.

It is concluded that at least the exceptions to the hearsay rule which generally apply to administrative cases apply when a school board hears a proposed nonrenewal. This is due to long standing Supreme Court authority. It is also due to the fact that under SB 1 when an Independent Hearing Examiner hears a proposed nonrenewal, the Texas Rules of Evidence explicitly apply and when evidence is heard by a school board the Texas Rules of Evidence do not explicitly apply.

Due to SB 1 taking away the property interest that teachers used to have in term contracts after the expiration of the contracts' terms, it may be that even a more liberal standard is appropriate. However, in the present case, it is not necessary to reach that issue. It is determined that under the liberal exceptions to the hearsay rule for administrative proceedings that the written student statements at issue were properly admitted.

It is also determined that the mere fact that student and parent complaints were made in the present case is not sufficient to support the nonrenewal of Petitioner's contract. Respondent's board did not create a policy reason for the nonrenewal of a term contract that parent or student complaints were made. While the mere fact of filing of a complaint is not sufficient to support a nonrenewal, the student complaints at issue do constitute evidence for determining whether there is substantial evidence to support the nonrenewal. In the present case, it is found that there is substantial evidence to support Respondent's decision to nonrenew Petitioner's contract.

## Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.    Petitioner was employed as a teacher by Respondent under a term contract for the 2012-2013 school year.

2.    Petitioner publicly made fun of students' weight and appearance and otherwise disparaged students and made statements which a reasonable person would have known would make the students feel uncomfortable during the 2012-2013 school years.

3.    Respondent has not created a policy reason for the nonrenewal of a term contract: that a teacher has received parent or student complaints.

4.    The administration tendered and the school board admitted into evidence student statements. These student statements were made as a result of an investigation by Petitioner's principal into a parental complaint. The principal was an experienced principal who used the investigative tool of asking open ended questions. The students who drafted the statements at issue were not out to get Petitioner.

## Discussion

Petitioner contends Respondent improperly nonrenewed his term contract because it is based in part on the fact that complaints were made and there is not substantial evidence to support the substance of the complaints because what the district relies upon as evidence is objected to hearsay. Respondent denies Petitioner's claims.

---

[1] *See* 19 TEX. ADMIN. CODE §157.1072(i); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

TCNA

The Term Contract Nonrenewal Act[2] ("TCNA") was passed by the 67th Legislature in 1981. Term Contract Nonrenewal Act, 67th Leg., R.S., ch. 765, 1981 Tex. Gen Laws 2847. This law fundamentally changed teacher[3] contracts. Before the TCNA many districts hired teachers and administrators on one-year contracts. When the contract term expired, the district was not required to offer a contract for the new school year. *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). Prior to the passage of the TCNA, school districts were not required to establish policy reasons for ending a contractual relationship, to give teachers the reasons why ending the contractual relationship was proposed, and to provide teachers with the opportunity for a hearing where the administration had the burden of proof to show that the teacher's contract should be nonrenewed. If a teacher's contract was not nonrenewed, the school board was not only required to hire the teacher for the next school year, but also to employ the teacher in the same professional capacity for the next school year.

*Seifert*

Petitioner relies on the case of *Seifert v. Lingleville Independent School District*, Docket No. 174-R1a-782 (Comm'r Educ. 1983) for the proposition that a school district cannot rely on the fact that complaints were made as a reason for nonrenewal. The Commissioner's Decision in *Seifert*, which found for the teacher, held that a "community feeling of incompetence" was not a legitimate ground for nonrenewal. The Commissioner determined that while incompetence can be a legitimate ground for nonrenewal, a community's feelings about incompetence cannot. The Commissioner's Decision was appealed to district court. The district court affirmed the Commissioner's Decision. The Third Court of Appeals overturned the district court's decision.

---

[2] Section 1 of SB 341 itself provided that "this act shall be known as "The Term Contract Nonrenewal Act."

[3] From the beginning, the TCNA has used an expansive definition of "teacher" that includes many who are not normally referred to as teachers.

*Lingleville Indep. Sch. Dist. v. Texas Central Education Agency*, No. 14,229, (Austin Jan. 9, 1985) overturned by *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). The Supreme Court overturned the decision of the appellate court and affirmed the Commissioner's Decision solely on the grounds that the district's policy reasons for the nonrenewal of term contracts included "incompetence" but not a "community feeling of incompetence." *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). The Court did not reach the issue of whether a "community feeling of incompetence" could be a ground for a nonrenewal. In the present case, there is no need to go any further than the Supreme Court's holding in *Seifert* as to the issue of notice[4]. Because Respondent does not list "community or student complaints" as one of its policy reasons for nonrenewal, the nonrenewal of Petitioner's contract cannot be affirmed simply by showing that there were community or student complaints. To prevail, Respondent needs to show that substantial evidence supports at least one of the noticed policy reasons for proposed nonrenewal.

Evidence

Petitioner contends that no evidence exists in the local record sufficient to show that there is substantial evidence to support the nonrenewal of his contact. In particular, Petitioner contends the statements relied upon by Respondent do not constitute evidence because they are hearsay. The parties dispute what counts as evidence. Petitioner argues for the application of the Texas Rules of Evidence. Respondent contends that the Texas Rules of Evidence do not apply.

---

[4] It should be noted that in the case of *Tarrant v. Clear Creek Indep. Sch. Dist.*, 238 S.W.3d 445 (Tex. App.-Houston [1st Dist.], no pet.) the court held that "The Education Code places no limits on the reasons for nonrenewal of a teacher's contract, but merely requires that reasons (1) not be arbitrary and capricious and (2) be supported by substantial evidence. *See* TEX. EDUC. CODE ANN. § 21.209 (Vernon 2006)."

<u>Original TCNA</u>

In determining what is to be considered as evidence in a nonrenewal heard before a school board, the first resort is to the statue itself. In the original TCNA, the word "evidence" appears one time, in the former section 21.207(a):

> If the teacher is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education pursuant to Section 11.13 of this code. The commissioner may not substitute his judgment for that of the board of trustees, unless the decision below was arbitrary, capricious, unlawful, or not supported by substantial *evidence*.

Term Contract Nonrenewal Act, 67th Leg., R.S., ch. 765, 1981 Tex. Gen Laws 2847, 2848 (emphasis added) There also is a brief provision regarding how a hearing on the proposed nonrenewal of a contract is to be conducted: "[t]he hearing is to be conducted in accordance with rules promulgated by the district." *Id.* The original statute itself provides little guidance as to what is to be considered evidence. Although it may perhaps be inferred that when a school district creates its rules on conduct for a hearing, that the district will make some rules concerning evidence.

*Seifert*

An early Commissioner's case considered what evidence was or whether a fact stated in the record could be considered as evidence for substantial evidence purposes. *Seifert v. Lingleville Independent School District*, Docket No. 174-R1a-782 (Comm'r Educ. 1983). In *Seifert*, the Commissioner held that the reference in the TCNA to "substantial evidence" meant that the normal court rules for evidence would apply and that the school district's policy that allowed the board to consider what it "believed to be fair and reasonable" did not establish the standard for evidence. The Commissioner rejected the district's evidentiary standard that was less stringent than the usual court standard

The Commissioner specifically held:

In the present case, it is not necessary to define precisely what "evidence" is, because it is clear what "evidence" is not: "In Texas the hearsay rule applies in administrative hearings, just as it does in court. And it is a rule that forbids the reception of evidence rather than one that merely goes to the weight of the evidence." *Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186 (Tex. 1972).

The sentence immediately following the quoted sentence in the *Lewis* case was not cited by the Commissioner in *Seifert* but it should be considered:

It should quickly be added that in administrative hearings considerable discretion is permitted in allowing evidence to be introduced by virtue of the liberal exceptions to the rule.

*Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186 (Tex. 1972). As is so often the case with questions concerning hearsay, the question is not whether the proffered evidence is hearsay, but whether a hearsay exception applies. While hearsay applies in the same manner in court cases and administrative cases, there is more discretion allowed in the administrative cases to admit hearsay because of liberal exceptions to the hearsay rule which apply in the administrative arena.

Liberal Hearsay Exceptions

The liberal administrative exceptions to the hearsay rule, which were first made by case law, have been codified in the Administrative Procedures Act:

The rules of evidence as applied in a nonjury civil case in a district court of this state shall apply to a contested case except that evidence inadmissible under those rules may be admitted if the evidence is:
(1) necessary to ascertain facts not reasonably susceptible of proof under those rules;
(2) not precluded by statute; and
(3) of a type on which a reasonably prudent person commonly relies in the conduct of the person's affairs.

TEX. GOV'T CODE § 2001.081. This section applies to hearsay claims. *Lubbock Radio Paging Service v. Southwestern Bell*, 607 S.W.2d 29, 32 n. 2 (Tex. Civ. App.-Beaumont 1980, writ ref'd n.r.e.) It would seem that these are the standards that apply to evidence

considered by a board of trustees when the board hears the proposed nonrenewal of a term contract, at least under the original TCNA, as a board hearing is an administrative hearing. It should also be pointed out that evidentiary rulings are generally reviewed under an abuse of discretion standard. *Horizon/ CMS Health Care v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). Hence, before the Commissioner the issue would be whether a school district abused its discretion in applying the standards set out in Texas Government Code section 2001.081. However, since the time of the *Seifert* decision, there have been changes to the TCNA and additional Commissioner's Decisions which have addressed the subject of evidence.

It should be noted that the Commissioner does not seem to have ever cited or referred to the sentence in *Lewis*, immediately following the two sentences from *Lewis* quoted in *Seifert*. However, if the first sentence states the applicable law, so does the second sentence.

## Gipson

In *Gipson v. Ore City Independent School District*, Docket No. 178-R1-690 (Comm'r Educ. 1992), the Commissioner held:

> While the Texas Rules of Evidence do not apply to local hearings, they do apply to the record on appeal.

As shown above, this is an incomplete statement of the law. Hearsay applies in the same manner before the Commissioner as it does before a court, but before the Commissioner additional liberal exceptions apply. In *Gipson*, there is no analysis of the liberal hearsay exceptions in the administrative context. However, the Commissioner did reject the testimony of a teacher who repeated what two students told her as hearsay. It should also be noted that at the time *Gipson* was written, there was no Texas Education Code section 21.301(c) which in most cases, limits the Commissioner's review to issues raised in the local record.

_Dunlap_[5]

In *Dunlap v. Breckenridge Independent School District*, Docket No. 334-R1-692 (Comm'r Educ. 1995), the Commissioner relies on *Gipson* for the proposition that the Texas Rules of Evidence apply before the Commissioner. Again, there is no discussion of the liberal exceptions to hearsay that apply before administrative bodies. The Commissioner found that several types of hearsay evidence could not be considered including a written student note.

SB 1

The most significant statutory change to teacher contracts after the adoption of the TCNA, was SB 1 in 1995, which was at the time the largest substantive bill in Texas history. Ellen Williams, Education, 49 SMU L. Rev. 901, 903 (1996). SB 1 significantly changed how the proposed nonrenewal of a term contract was to be handled. Under SB1, a school board has a choice of whether to hear a proposed nonrenewal or whether to allow an Independent Hearing Examiner to hear a proposed nonrenewal. If the school district decides to hear a proposed nonrenewal, the hearing, just as in the past, is to be "conducted in accordance with rules adopted by the board." However, SB 1 adds several specific requirements for the hearing which were not found in previous law. These new standards are:

> (c) At the hearing, the teacher may:
> > (1) be represented by a representative of the teacher's choice;
> > (2) hear the evidence supporting the reason for nonrenewal;
> > (3) cross-examine adverse witnesses; and
> > (4) present evidence.

---

[5] While Dunlap was decided in 1995, the same year that SB 1 passed, the case was filed June 1992.

TEX. EDUC. CODE § 21.207. These standards for the hearing are in marked contrast to the standards for a hearing to be held before an Independent Hearing Examiner which include:

Sec. 21.255 HEARINGS BEFORE HEARING EXAMINER. (a) The hearing examiner may issue subpoenas at the request of either party for the attendance of witnesses and the production of documents at the hearing and may administer oaths, rule on motions and the admissibility of evidence, maintain decorum by closing the hearing or taking other appropriate action, schedule and recess the proceedings, and make any other orders as provided by rules adopted by the commissioner. The hearing examiner may issue a subpoena for the attendance of a person who is not an employee of the district only if the party requesting the issuance of the subpoena shows good cause for the subpoena. The hearing must be held within the geographical boundaries of the school district or at the regional education service center that serves the district.

(b) A hearing examiner may allow either party to take one or more depositions or to use other means of discovery before the hearing. The hearing examiner, at the request of either party, may issue subpoenas for the attendance of witnesses and the production of documents at the deposition. The hearing examiner may issue a subpoena for the deposition of any person who is not an employee of the district only if the party requesting the issuance of the subpoena shows good cause for the subpoena. The deposition must be held within the geographical boundaries of the school district or at the regional education service center that serves the district.

(c) A procedure specified in this section may be changed or eliminated by written agreement of the teacher and the school district after the teacher receives the written notice of the proposed action.

(d) If the hearing examiner is unable to continue presiding over a case at any time before issuing a recommendation or decision, the parties shall request the assignment of another hearing examiner under Section 21.254 who, after a review of the record, shall perform any remaining functions without the necessity of repeating any previous proceedings.

(e) The school district shall bear the cost of the services of the hearing examiner and certified shorthand reporter at the hearing and the production of any original hearing transcript. Each party shall bear its respective costs, including the cost of discovery, if any, and attorney's fees.

Sec. 21.256. CONDUCT OF HEARING. (a) A hearing under this subchapter must be private unless the teacher requests in writing that the hearing be public, except that a hearing examiner may close a hearing if necessary to maintain decorum.

(b) The hearing is not subject to Chapter 2001, Government Code.

(c) At the hearing, a teacher has the right to:

      (1) be represented by a representative of the teacher's choice;

      (2) hear the evidence on which the charges are based;

(3) cross-examine each adverse witness; and

(4) present evidence.

*(d) The Texas Rules of Civil Evidence apply at the hearing. A certified shorthand reporter shall record the hearing.*

(e) The hearing shall be conducted in the same manner as a trial without a jury in a district court of this state. The hearing examiner's findings of fact and conclusions of law shall be presumed to be based only on admissible evidence.

(f) To protect the privacy of a witness who is a child, the hearing examiner may:

(1) close the hearing to receive the testimony of the witness; or

(2) order that the testimony or a statement of the witness be presented using the procedures prescribed by Article 38.071, Code of Criminal Procedure.

(g) An evaluation or appraisal of the teacher is presumed to be admissible at the hearing.

(h) At the hearing, the school district has the burden of proof by a preponderance of the evidence.

(Emphasis added). In a hearing conducted by an Independent Hearing Examiner the full Texas Rules of Evidence apply, not just the hearsay rules. The Legislature did not say that additional liberal exceptions to the hearsay rule apply when an Independent Hearing Examiner hears a proposed nonrenewal. Hence, only the Texas Rules of Evidence apply when an Independent Hearing Examiner hears a proposed nonrenewal.

The Legislature's decision to specifically require that the Texas Rules of Evidence always apply to a hearing before an Independent Hearing Examiner and not to require the application of the Texas Rules of Evidence when a school board hears the proposed nonrenewal of a contract indicates the Texas Rules of Evidence do not solely apply when a school board hears a proposed nonrenewal. By not specifying that the Texas Rules of Evidence solely apply when a proposed nonrenewal is heard by a school district, it would seem that the normal rules for administrative bodies concerning hearsay apply, that is, the standards set out in *Lewis* and Texas Government Code section 2001.081 apply when a school district hears a proposed nonrenewal.

Further, it should be noted that under SB 1, in an appeal to the Commissioner of a nonrenewal, the parties are limited to the issues raised in the local record. TEX. EDUC.

CODE § 21.301(c). If a hearsay claim is not raised at the local record, it cannot be raised before the Commissioner. *Whitaker v. Moses*, 40 S.W.3d 176, 178-179 (Tex. App.-Texarkana 2001, no pet.). Before a school board hearing the proposed nonrenewal of a contract, a hearsay objection needs to be made or it is waived.

*Grounds*

Another significant change to nonrenewal law was made by SB 1. This change concerns the type of interest a teacher has in a term contract after the contract's term has expired. This change should also be considered. In *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 420 (Tex. 1993), which was decided two years before SB 1 was passed, the Texas Supreme Court held that a teacher who held a term contract had a property interest beyond that contract's term. This was a significant holding because if one has a property interest, one is entitled to due process. The Commissioner had held long prior to *Grounds* that a term contract teacher was entitled to due process during a nonrenewal hearing. *Salinas v. Ben Bolt-Palito Blanco Indep. Sch. Dist.*, No. 202-R1a-882 (Comm'r Educ. 1983).

The recognition of due process rights of term contract teachers when faced with a proposed nonrenewal no doubt influenced the Commissioner's determinations as what could be considered evidence for substantial evidence purposes. A statute is to be interpreted so as to be constitutional. TEX. GOV'T CODE § 311.021(1). If due process requires that objected to hearsay cannot be considered, a statute that implicates due process should not be interpreted so as to allow hearsay testimony.

No Property Interest

Soon after *Grounds* was issued, the Legislature made a significant change regarding whether a term contract teacher had a property interest in a term contract. As part of SB 1, the Legislature amended the TCNA to provide:

A teacher does not have a property interest in a term contract beyond its term.

TEX. EDUC. CODE § 21.204(e). A number of cases have held that this subsection means what it says. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 29-30 (Tex. App.-Austin 1999, no pet.); *Whitaker v. Moses*, 40 S.W.3d 176, 179 (Tex. App.-Texarkana 2001, no pet.); *Peters v. Nelson*, 2002 Tex. App. LEXIS 2539, 10 (Tex. App.-Dallas 2002, no pet.); *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 245 (Tex. App.-El Paso 2012, no pet.); *Ray v. Houston Indep. Sch. Dist.*, 438 Fed. Appx. 332, 335 (5th Cir. 2011). The impact of this change can be seen in the first case to consider the issue:

> In a 1993 case, the Texas Supreme Court held that the TCNA requires pre-established reasons for the nonrenewal of a teaching contract and that this substantive limit on the State's discretion is an essential characteristic of a property interest warranting constitutional protection. *See Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex. 1993). [HN2] In 1995, however, the Texas legislature enacted section 21.204(e) of the Education Code, stating specifically that the TCNA does not provide a property interest in a contract beyond its term. *See* Tex. Educ. Code Ann. § 21.204(e) (West 1996). The language in section 21.204(e) supersedes the holding in *Grounds*. Stratton has no property interest under Texas law.
>
> Stratton complains that by setting a time limitation without first conferring with the parties and by deducting cross-examination from that time, the Board denied her the process she was due. *See* AISD Board Policy DDA (Local), § XV(H). [HN3] An agency's failure to follow its own procedural rules governing employment will not create a property interest which otherwise does not exist. *See Alford*, 738 S.W.2d at 316. Under section 21.204(e) of the Education Code, Stratton has no protected property interest in her term contract. *See* Tex. Educ. Code Ann. § 21.204(e). Because Stratton has no protected property interest under state law and because an agency's failure to follow local policy vests no property interest, no right to due process exists. *See Moore*, 871 F.2d at 548. Nevertheless, a one-hour limitation on presenting evidence to preserve one's livelihood offends traditional notions of fairness. We sympathize with her complaint and disapprove of the Board limiting the parties' presentation so severely that the affected teacher was not permitted to present her side for the Board's consideration. [1] Under these circumstances, however, we overrule her first issue.

*Stratton*, 29-30. Here the fact that the district so limited the teacher's time to present her case that she was not able to complete cross-examination was found to offend traditional notions of fairness, but was not sufficient to overturn the board's decision to nonrenew the teacher's contract. It would seem that the lack of property interest may also limit the

extent that a school district would be required to apply the hearsay rule and might expand the applicable hearsay exceptions. However, this issue need not be decided in the present case, as applying the hearsay rule and the liberal exceptions for administrative cases resolves the present case.

Post SB 1 Decisions

Since SB 1 was passed, some Commissioner's Decisions have addressed hearsay issues or whether the Texas Rules of Evidence apply. In no case cited by either party, did the Commissioner address the issues of whether the Texas Rules of Evidence solely applied, the liberal exceptions to hearsay allowed in administrative proceedings applied; or whether some other rules applied.

*Anderson*

Petitioner notes that the Commissioner wrote in *Anderson v. Jacksonville Independent School District*, Docket No. 142-R1-397 (Comm'r Educ. 1997) that "[p]roperly objected to hearsay cannot support a board's decision." The Commissioner made no reference to either the Texas Rules of Evidence or the liberal exceptions to the hearsay rules that apply to administrative decisions. Further, in *Anderson* after the teacher made hearsay objections at the local level, there were rulings on the objections. Both parties assumed hearsay applied and neither contended that the liberal exceptions to hearsay in administrative matters should be considered. The Commissioner determined that certain rulings on hearsay objections were incorrect.

*Carnot*

In *Carnot v. North East Independent School District*, Docket No. 066-R1-605 (Comm'r Educ. 2005), the parties had a dispute as to whether a particular hearsay exception found in the Texas Rules of Evidence applied and whether a document setting out a chronology of events was allowed. Neither party raised an issue as to whether the Texas Rules of Evidence solely governed the hearsay issue or whether the liberal exceptions for administrative hearings applied.

062-R1-07-2013                                    -14-

*Dews and Green*

In *Dews v. Tyler Independent School District*, Docket No. 053-R1-0508 (Comm'r Educ. 2008), the main evidentiary issue had to do with the procedures for admitting evidence. The Commissioner held:

> This nonrenewal was heard exclusively by Respondent's board of trustees. Respondent did not choose to have the case heard by a certified hearing examiner under Texas Education Code section 21.207(b). If the case had been heard by a certified hearing examiner, the Texas Rules of Evidence would apply. Tex. Educ. Code § 21.256(d). In fact, a hearing before a certified hearing examiner is conducted as a district court trial without a jury. Tex. Educ. Code § 21.256(e). Under such rules, there are clear standards concerning the admission of evidence. Evidence needs to be formally admitted under those rules. However, since this case was not heard by a certified hearing examiner. These standards do not apply. The question then becomes "how is it determined that a document was admitted or not?" In a nonrenewal not heard by a certified hearing examiner, whether evidence is admitted will be determined by district policy and practice.

The Texas Rules of Evidence do not directly apply when a board hears a proposed nonrenewal. *Green v. Brazosport Independent School District*, Docket No. 083-R1-0512 (Comm'r Educ. 2012) also holds that the Texas Rules of Evidence do not directly apply to proposed nonrenewal hearings heard by school boards. While the Texas Rules of Evidence do not directly apply to proposed nonrenewal hearings heard by boards of trustees, this does not mean that the hearsay rules found in the Texas Rules of Evidence have no applicability as to the issue of hearsay.

In a footnote in *Dews*, the Commissioner stated:

> It would be wise for a school district to adopt as a policy that specified what evidentiary rules apply when a proposed nonrenewal is heard by the board.

This remains good advice as a proposed nonrenewal hearing is to "be conducted in accordance with rules adopted by the board." TEX. EDUC. CODE § 21.207(b).

<u>Hearsay in the Present Case</u>

The issue of what hearsay exceptions apply is dispositive in the present case. The issues in dispute involve what Petitioner did and said in class. The only people who observed what was going on in class were Petitioner and his students. Petitioner testified before the school board. Student statements, which were taken as part of an investigation, were offered into evidence over Petitioner's hearsay objections. No student testified. If Petitioner is to be believed his actions would not warrant the nonrenewal of this contract. If the students are be believed, Petitioner's actions do warrant the nonrenewal of his contract. Petitioner does not contend that if the students statements are properly in evidence that there is not substantial evidence to support the nonrenewal of his contract. If Petitioner publicly made fun of students' weight and appearance and otherwise disparaged students and made statements which a reasonable person would know would make children feel uncomfortable, Respondent had sufficient reason to nonrenew his contract. Petitioner denies that some of the incidents alleged by the students occurred at all and puts the incidents that he admits occurred in a very different context than do the students. If the student statements can be considered for substantial evidence purposes, the nonrenewal of Petitioner's contract should be affirmed because several policy reasons for nonrenewal would have been met.

<u>Standards</u>

As indicated above, if one does not consider the change made by SB 1 in taking away a term contract teacher's property interest in the teacher's contract after the expiration of the contract, the standard to be applied is whether Respondent's board abused its discretion in not excluding the student statements. As there is no dispute that the statements constitute hearsay under the Texas Rules of Evidence, the issue is whether the liberal exceptions set out in Texas Government Code section 2001.081 apply in the present case. If it were found that those liberal exceptions did not apply to the student

statements, the Commissioner would have to consider whether the lack of a property interest in the nonrenewal context changes the standards concerning hearsay exceptions.

Necessary to Ascertain Facts

The first standard is whether the proffered evidence is "necessary to ascertain facts not reasonably susceptible of proof under" the rules used by a Texas district court in a nonjury trial. TEX. GOV'T CODE § 2001.081(1). The student statements meet this first standard. In a case heard by an Independent Hearing Examiner either party can subpoena witnesses even student witnesses. TEX. EDUC. CODE § 21.255. When a school board hears a proposed nonrenewal itself, it does not have subpoena power. While students may be asked to testify, many parents would probably not choose to subject their children to cross-examination by an attorney who is zealously advocating for his client's employment. The lack of subpoena power means that what occurred in a classroom when only a teacher and students were present is not reasonably susceptible of proof using the hearsay exceptions as applied by courts. The student statements are necessary to ascertain facts not reasonably susceptible for proof.

Not Precluded by Statute

The second standard is whether the admission of the proffered evidence is "not precluded by statute." TEX. GOV'T CODE § 2001.081(2). No statute precludes the admission of the student statements.

Of the Type

The third standard is whether the evidence is of the "type on which a reasonably prudent person commonly relies in the conduct of the person's affairs." TEX. GOV'T CODE § 2001.081(3). In the present case, the student statements were taken as part of an investigation by an experienced principal. The principal asked the students open ended questions. There is no evidence that the students conspired to get the teacher. A reasonably prudent person would rely on such evidence in the conduct of a person's affairs. Respondent's decision to admit the documents in question was not an abuse of

discretion. As all the requirements for the admission of the student statements are met, it is concluded that there is substantial evidence to support the nonrenewal of Petitioner's contract. Additionally, there is no need to consider the issue of whether a lesser standard for hearsay exceptions is appropriate because Petitioner does not have a property interest in his term contract after the expiration of the contract's term.

Conclusion

Respondent's decision to nonrenew Petitioner's contract should be affirmed. While the nonrenewal of Petitioner's contract cannot be supported merely by the fact that parent and student complaints were received there is substantial evidence that Petitioner's statements warrant the nonrenewal of his contract. Respondent did not abuse its discretion when it allowed in the student statements as they are covered by the liberal exceptions to the hearsay rule allowed in administrative proceedings.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1.    The Commissioner has jurisdiction over this case under Texas Education Code section 21.301.

2.    The nonrenewal of teacher's term contract is to be based on the occurrence of a pre-established policy reason. TEX. EDUC. CODE § 21.303(b).

3.    Because Respondent does not have a policy reason to nonrenew a term contract: that the district has received parent or student complaints, Respondent could not nonrenew Petitioner's contract solely because it has received parent and student complaints about Petitioner. The fact that a complaint was received is not by itself sufficient grounds to nonrenew Petitioner's contract. TEX. EDUC. CODE § 21.303(b).

4.    In Texas, the hearsay rule applies in administrative hearings, just as it does in court. And it is a rule that forbids the reception of evidence rather than one that merely

goes to the weight of the evidence. It should quickly be added that in administrative hearings considerable discretion is permitted in allowing evidence to be introduced by virtue of the liberal exceptions to the rule.

5. The liberal exceptions to the hearsay rule in the administrative context have been codified at Texas Government Code section 2001.081.

6. In the context of the a hearing on the proposed nonrenewal of a term contract which is heard by a school board hearsay evidence may be admitted if it meets standards set out in Texas Government Code section 2001.081. Whether these standards should be lessened because a teacher does not have a property interest in a term contract beyond the contract's need not be considered in the present case.

7. A school board's ruling on a hearsay objection is reviewed under the abuse of discretion standard.

8. Respondent did not abuse its discretion when it entered into evidence the student statements referenced in Finding of Fact No. 4.

9. There is substantial evidence to support the nonrenewal of Petitioner's term contract.

10. The decision to nonrenew Petitioner's term contract is not arbitrary, capricious, or unlawful.

11. The Petition for Review should be denied.

## ORDER

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal, be, and is hereby Denied.

SIGNED AND ISSUED this 21st day of August, 2013.

MICHAEL WILLIAMS
COMMISSIONER OF EDUCATION

# APPENDIX B

Cause No. D-1-GN-13-003654

| | | |
|---|---|---|
| JORGE VAZQUEZ, Plaintiff, | § § § | IN THE DISTRICT COURT |
| v. | § § § | OF TRAVIS COUNTY, TEXAS |
| MICHAEL WILLIAMS STATE COMMISSIONER OF EDUCATION, ET AL Defendant | § § § § § | 419TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

The Decision of the Commissioner is reversed.

In his Decision, the Commissioner framed the central question to be decided in this case as follows:

> In the local record there are written student statements that constitute hearsay that were admitted over a hearsay objection. The issue is whether a hearsay exception applies to the documents.

Commissioner's Order, page 1.

The Commissioner's answer to this central question is as follows:

> It is determined that under the liberal exceptions to the hearsay rule for administrative proceedings that the written student statements at issue were properly admitted.

Commissioner's Order, page 2.

The Commissioner relies on Texas Government Code section 2001.081 to find the "liberal hearsay exceptions" he applies to this case. The parties dispute whether Texas Government Code Section 2001.081 even applies to school district non-renewal hearings, but that question need not be answered because, even if it does, it provides no support for the Commissioner's decision on the record of this non-renewal hearing. All three parts of section 2001.081 must be met for its exception to apply. The salient part is that the hearsay evidence in question is "necessary to ascertain facts not reasonably susceptible of proof..." The Commissioner's only analysis of this prong is merely an unsupported assumption that "many parents would probably not choose to subject their children to cross examination..." (Commissioner's Order, page 17), but the defendants have not cited the court to any evidentiary support in this record for that assumption. To the contrary, the only evidence addressing this assumption cuts against it:

> Q.     Did you have any concerns, [Principal] Villareal, about – and I know we don't have subpoena powers in a situation like this, but did you

have any concerns about bringing these students in to reiterate what has been stated here today?

A.   No.

Q.   How – what do you think that process would be like for them, as far as putting them on the witness stand and having them having to repeat this? Did you have any concerns that that might be difficult for them?

A.   I believe not.

Hearing Transcript, 76/23-77/8. Accordingly, Section 2001.081, even if applicable to this case, provides no support for the "liberal hearsay exceptions" relied upon by the Commissioner.

The Commissioner has taken the firm position in his order that there is no substantial evidence to support the decision of the Board of Trustees if the hearsay statements of the students cannot be considered for substantial evidence purposes: "The issue of what hearsay exceptions apply is dispositive in the present case." Commissioner's Order, page 16. This Court has concluded that the Commissioner erred in applying Section 2001.081 in this case to allow the students' statements to be considered for substantial evidence review.

The Commissioner's Order poses one last question about hearsay exceptions without answering it. The Commissioner questions whether "the lack of a property interest [the parties dispute the existence of a property interest, but the Commissioner concludes that no property interest exists]... in the non-renewal context changes the standards concerning hearsay exceptions." Commissioner's Order, pages 16–17. But whether or not a property right exists, Texas Education Code Section 21.207(c) provides a statutory right for the teacher to "cross examine adverse witnesses...." Broadly permitting hearsay would render that statutory right essentially meaningless, especially where, as in this case, the only substantial evidence, as found by the Commissioner, is hearsay statements by "adverse witnesses" who do not appear at the hearing to be cross examined.

This Court is bothered by the record in this case, and suspects that the Commissioner was bothered in the same way. It is truly unfortunate that the school district chose to conduct this hearing without calling a single witness to provide non-hearsay testimony about the salient facts, and without providing an adequate explanation or excuse for their failure to do so. In making this choice, the school district left the Commissioner, and this Court, without substantial evidence to support its decision. Accordingly, the Court must now reverse.

IT IS THEREFORE ORDERED THAT

The Decision of the Commissioner of Education is HEREBY REVERSED, and this case is REMANDED to the Commissioner of Education to enter an order REVERSING the action of Los Fresnos Independent School District nonrenewing the employment contract of Jorge Vazquez at the end of the 2012-13 school year and ORDERING the District to comply with Texas Education Code Section 21.304(e) and/or (f).

All costs of court are taxed against Defendants.

This Order fully disposes of all claims and all parties and constitutes a FINAL and APPEALABLE JUDGMENT.

SIGNED AND ENTERED on the 3rd day of September, 2014.

THE HONORABLE SCOTT H. JENKINS
JUDGE PRESIDING

# APPENDIX C

> Vernon's Texas Statutes and Codes Annotated
>  Education Code (Refs & Annos)
>   Title 2. Public Education (Refs & Annos)
>    Subtitle D. Educators and School District Employees and Volunteers
>     Chapter 21. Educators (Refs & Annos)
>      Subchapter E. Term Contracts

V.T.C.A., Education Code § 21.207

§ 21.207. Hearing Under Term Contract

Effective: September 28, 2011

Currentness

(a) If the teacher desires a hearing after receiving notice of the proposed nonrenewal, the teacher shall notify the board of trustees in writing not later than the 15th day after the date the teacher receives hand delivery of the notice of the proposed action, or if the notice is mailed by prepaid certified mail or delivered by express delivery service, not later than the 15th day after the date the notice is delivered to the teacher's address of record with the district. The board shall provide for a hearing to be held not later than the 15th day after the date the board receives the request for a hearing unless the parties agree in writing to a different date. The hearing must be closed unless the teacher requests an open hearing.

(b) The hearing must be conducted in accordance with rules adopted by the board. The board may use the process established under Subchapter F. [1]

(b-1) Notwithstanding any other provision of this code, this subsection applies only to a school district with an enrollment of at least 5,000 students. The board of trustees may designate an attorney licensed to practice law in this state to hold the hearing on behalf of the board, to create a hearing record for the board's consideration and action, and to recommend an action to the board. The attorney serving as the board's designee may not be employed by a school district and neither the designee nor a law firm with which the designee is associated may be serving as an agent or representative of a school district, of a teacher in a dispute between a district and a teacher, or of an organization of school employees, school administrators, or school boards of trustees. Not later than the 15th day after the completion of the hearing under this subsection, the board's designee shall provide to the board a record of the hearing and the designee's recommendation of whether the contract should be renewed or not renewed. The board shall consider the record of the hearing and the designee's recommendation at the first board meeting for which notice can be posted in compliance with Chapter 551, Government Code, following the receipt of the record and recommendation from the board's designee, unless the parties agree in writing to a different date. At the meeting, the board shall consider the hearing record and the designee's recommendation and allow each party to present an oral argument to the board. The board by written policy may limit the amount of time for oral argument. The policy must provide equal time for each party. The board may obtain advice concerning legal matters from an attorney who has not been involved in the proceedings. The board may accept, reject, or modify the designee's recommendation. The board shall notify the teacher in writing of the board's decision not later than the 15th day after the date of the meeting.

(c) At the hearing before the board or the board's designee, the teacher may:

(1) be represented by a representative of the teacher's choice;

(2) hear the evidence supporting the reason for nonrenewal;

(3) cross-examine adverse witnesses; and

(4) present evidence.

**Credits**

Added by Acts 1995, 74th Leg., ch. 260, § 1, eff. May 30, 1995. Amended by Acts 2011, 82nd Leg., 1st C.S., ch. 8 (S.B. 8), § 10, eff. Sept. 28, 2011.

Notes of Decisions (4)

Footnotes

1        V.T.C.A., Education Code § 21.251 et seq.

V. T. C. A., Education Code § 21.207, TX EDUC § 21.207

Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.